971 So.2d 1149 (2007)
Gary OREMAN
v.
Eleanor Deutsch OREMAN.
No. 07-CA-296.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
Rehearing Denied December 18, 2007.
*1151 William H. Cook, Jr., New Orleans, Louisiana, for Plaintiff/Appellant.
Robert C. Lowe, David M. Prados, Lowe, Stein, Hoffman Allweiss & Hauver, L.L.P., New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and GREG G. GUIDRY.
THOMAS F. DALEY, Judge.
In this domestic case, Eleanor Deutsch Oreman seeks to partition the federal retirement benefits of her former spouse, Gary Oreman. This is the second appeal in this case.[1] This appeal addresses the Suspensive Appeal of the Partition Judgment, a Devolutive Appeal of the Dismissal of a Petition for Preliminary Injunction, a Motion to Dismiss the Devolutive Appeal, and a Writ Application.
The prior appeal record in this case indicates that after approximately thirty-three years of marriage, the parties obtained a judgment of divorce on July 2, 1996 and that they executed a consent judgment of partition of community property on September 30, 1996. On June 14, 2004, Eleanor Oreman filed a Petition for Supplemental Partition of Unpartitioned Community Property seeking partition of Gary Oreman's federal retirement/annuity plan. The first partition judgment was silent regarding the retirement benefits. Gary Oreman answered this petition and also filed a Reconventional Demand against Eleanor Oreman on the basis that all community property had been previously partitioned by the 1996 consent judgment. This matter was tried on January 18, 2005, and both parties submitted post-trial memoranda.
*1152 The record contained two judgments, one signed by the trial judge on February 14, 2005, and a second and different judgment, signed on April 18, 2005. The parties appealed the April judgment. This Court found, however, that the valid judgment was the February one. This Court declared the second judgment null, and remanded for further proceedings. Because the February judgment had not been noticed, delays for applying for a new trial had never commenced. Mrs. Oreman filed a Motion for New Trial for re-argument purposes only, arguing that the April judgment was correct and should be signed.
The trial court granted the Motion for New Trial.[2] The trial court ruled and on January 17, 2007, reissued the April judgment. Mr. Oreman applied for writs to this Court.[3] This Court vacated the trial court's ruling, finding that it was without authority to reissue a judgment found to be null, and required the trial court to render its own judgment based upon the record, whether substantially the same or not.
On remand, the trial court rendered judgment in favor of Mrs. Oreman on February 7, 2007, finding that she is presently entitled to payment of her community property share of the retirement benefits from Mr. Oreman's Civil Service Retirement System account.[4] Mr. Oreman filed a Suspensive Appeal to that judgment. Mrs. Oreman answered this appeal. In addition to his Suspensive Appeal of this judgment, Mr. Oreman has filed, in this Court, the Peremptory Exceptions of No Cause of Action (federal preemption) in the suspensive appeal, regarding several items in the judgment
After the partition judgment was issued, on March 5, 2007 Mr. Oreman filed a Rule and Petition for Mandatory Preliminary Injunction in Support of Right to Suspensive Appeal and Rule for TRO and Rule for Contempt, seeking to prevent Mrs. Oreman from executing the February 7, 2007 judgment prior to the expiration of suspensive appeal delays. He argued therein that Mrs. Oreman's counsel's act of sending a Court Order Acceptable for Processing (COAP) to the Office of Personnel Management (OPM), prior to the expiration of suspensive appeal delays, was a step in the execution of the February 7, 2007 judgment and thereby prohibited by LSA-C.C.P. art. 2252. His petition was dismissed upon the granting of certain Exceptions to the Rule and Petition filed by Mrs. Oreman. He seeks a devolutive appeal of this judgment.
Mrs. Oreman filed a Motion to Dismiss the Devolutive Appeal in this Court, as well as a Writ Application arguing that a written judgment signed by the trial court on August 24, 2007, concerning the dismissal of the Petition for Mandatory Preliminary Injunction, should be set aside, both of which we consider herein.
SUMMARY OF RULINGNS
On the Suspensive Appeal, we affirm in part, amend in part, and reverse in part the trial court's judgment of February 7, 2007, as described in detail below. We render judgment addressing Mrs. Oreman's Answer to the Appeal.
We deny the Motion to Dismiss Devolutive Appeal and deny the Writ Application. *1153 We find that the trial court erred in dismissing the Petition for Mandatory Preliminary Injunction and Rule for Contempt. We find that the trial court did not err in its act of signing a judgment on August 24, 2007.
In the devolutive appeal, we find that the trial judge erred in granting the Exceptions of Prematurity and Preemption to Mr. Oreman's Rule and Petition for Mandatory Preliminary Injunction. We find that the court should have considered the merits of this Petition. We find that counsel for Mrs. Oreman began execution of the February 7, 2007 judgment prior to the expiration of suspensive appeal delays, in violation of LSA-C.C.P. art. 2252. We find, however, that Mr. Oreman has not proven that he has sustained damages thereby.
SUSPENSIVE APPEAL, ANSWER, AND PEREMPTORY EXCEPTIONS
The record reveals that the parties were married from 1962 until the judgment of divorce on July 2, 1996. Mr. Oreman was employed by the federal government for a total of 26 years and 3 months, with at least 24 years of creditable service during the marriage. Mr. Oreman participated in the federal Civil Service Retirement System. He applied for and was granted disability retirement on January 18, 1987, when he was approximately 43 years old. Mr. Oreman's birthday is July 19, 1943.
Mr. Oreman appeals the trial court judgment of February 7, 2007, which ruled that Mrs. Oreman entitled to a community property interest in his federal retirement benefits before he reaches the age of 65. That judgment also made the awards retroactive to April 18, 2005, and awarded Mrs. Oreman certain rights incidental to Mr. Oreman's retirement benefits. First, Mr. Oreman appeals the statement in the judgment that it was based upon a "consent judgment" and the ruling that the judgment would be retroactive to April 18, 2005. Second, he argues that the court erred in Section 5 of the judgment by granting Mrs. Oreman an immediate share of his monthly benefit, which he argues is not classified as community property until he reaches his "normal retirement age" of 65.[5]
Third, Mr. Oreman argues that the court erred in Section 6 when it granted Mrs. Oreman a former spouse survivor annuity, and when the court ruled that Mr. Oreman should pay the entire cost of this benefit from his share of the former community property. Fourth, he contends that the trial court erred in finding that Mrs. Oreman's share of the benefit is heritable under Louisiana law.
Fifth, Mr. Oreman argues that the trial court erred in Section 9 when it ordered Mr. Oreman to assign 100% of all "Federal Employee Group Life Insurance" to Mrs. Oreman. Sixth, he argues that the trial court erred when it directed that Mrs. Oreman was eligible to enroll for Federal Employees Health Benefits Coverage. Seventh, Mr. Oreman argues that the trial court erred in Section 11 when it ordered Mr. Oreman to make an insurable interest election to create another annuity for Mrs. Oreman.
Eighth, Mr. Oreman argues that the trial court erred in basing its decision upon the testimony of Mrs. Oreman's expert, Beau Sagona.
Mrs. Oreman answered the appeal, requesting that the judgment be affirmed, but requesting additional relief because *1154 the trial court did not award her all the relief she prayed for at trial. Specifically, she argues that Mr. Oreman's appeal is premature because the trial court has not yet signed a Supplemental Judgment of Partition addressing Mrs. Oreman's claim in her Supplemental Petition for Partition, wherein she alleged that she is entitled to her share of those retirement benefits, with legal interest from the date of Mr. Oreman's receipt of each payment, retroactive to the date Mr. Oreman reached age sixty. In the alternative, she asks this Court to rule on these issues as all evidence is in the record.
In addition, Mrs. Oreman also prayed for damages, including sanctions, and including, but not limited to, her attorney's fees and court costs incurred in the lower court and this Court.
MR. OREMAN'S ASSIGNMENTS OF ERROR
First, Mr. Oreman argues that the trial court's judgment erred in mentioning a "consent judgment" when in fact none existed. Counsel for Mrs. Oreman agrees that no consent judgment existed regarding the partition of Mr. Oreman's federal retirement benefits, but argues that the inclusion of such language in the February 7, 2007 judgment is harmless, given that it is clear no consent judgment existed.[6] This Court agrees and attaches no significance to this language in the February 7, 2007 judgment.
We next consider Mr. Oreman's argument that the trial court erred in finding that his disability retirement benefits became a divisible community asset at his 60th birthday, rather than his 65th. The trial court judgment does not clearly identify the point at which Mr. Oreman's disability retirement benefits became a community asset, but by implication (since the judgment was made retroactive to April 18, 2005, which is before Mr. Oreman turned 62) we assume the trial court found that the disability retirement became a community asset upon Mr. Oreman's reaching the age of sixty. Mr. Oreman argues that this Court should find that "normal retirement age" is 65, as per Peairs v. Peairs, 98-1115 (La.App. 1 Cir. 5/14/99), 741 So.2d 731. He also argues under the rules governing his retirement system, he cannot "switch" his retirement designation from "disability" to "normal" or regular retirement.
Bordes v. Bordes, 98-1004 (La.4/13/99), 730 So.2d 443, recognized that a spouse's right to receive benefits payable by a retirement plan is an asset of the community, citing Sims v. Sims, 358 So.2d 919 (La.1978). Bordes distinguished disability benefits and retirement benefits, finding that the former were the separate property of the claimant spouse (to the extent these benefits were collected after divorce) because they replaced lost wages due to the inability to work. The court found that once Mr. Bordes reached "normal retirement age," the character of those benefits changed from disability to retirement, even though neither the amount nor the source of his payments changed. Hence, Ms. Bordes proved her entitlement to receive her marital portion of Mr. Bordes's retirement benefits attributable to his employment during the community upon Mr. Bordes reaching "normal retirement age."
Though Mr. Oreman participated in a federal government retirement system, Mrs. Oreman's community property rights are determined by state law. Sims v. Sims, supra.
*1155 Mr. Oreman argues that Mrs. Oreman is not entitled to a community property share of his disability retirement benefits until he reaches the "normal retirement age" of 65. Mr. Oreman argues that Mrs. Oreman's expert witness, Beau Sagona, testified without basis that his retirement age is 60, because at age 60, the characterization of his benefits changed from disability to retirement.
Mr. Sagona, an attorney, was qualified by the court as an expert in Estate Planning with knowledge of disability retirement systems. He testified that he was a Board Certified Estate Planning and Retirement Specialist by the Louisiana State Bar Association. His practice consisted of approximately one-third administered estates, one-third general civil law, and one-third community property divisions, specifically retirement plan divisions. He stated that he had handled a dozen cases involving federal retirement systems, six of which involved the Civil Service Retirement System. This was his first time testifying as an expert witness. Over Mr. Oreman's objections, he was accepted as an expert in the proffered field.
It is well settled that the trial court has wide discretion in determining whether to allow a witness to testify as expert, and his judgment will not be disturbed by the appellate court unless it is clearly erroneous. LSA-C.E. art. 702; Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073; Boone v. Boone, 39,544 (La.App. 2 Cir. 4/6/05), 899 So.2d 823 (cited by appellant). We see no abuse of the trial court's acceptance of Mr. Sagona as an expert in this area. In addition, this Court found his testimony about the Civil Service Retirement System helpful in explaining and clarifying the factual issues concerning Mr. Oreman's disability/retirement benefits. The judge, however, and not an expert must determine legal issues of community property law presented to the court.
Mr. Sagona testified that he concluded Mr. Oreman's "normal retirement age" under the CSRS plan was 60. He based his conclusion on three factors. First, he said that prior to Mr. Oreman turning 60, OPM could require him to submit to medical examinations in order to confirm his continued disabled status. Second, also until age 60, Mr. Oreman was required to submit a proof of earnings statement yearly.[7] These two things were no longer required once Mr. Oreman became 60, he testified. Last, Mr. Sagona testified that had Mr. Oreman continued employment until age 60, he would have been able to retire at the maximum benefit under the applicable formula as a result of his years of service.
In his reply brief, Mr. Oreman does not contest the basis for Mr. Sagona's first two conclusions. He does, however, vigorously argue that Mr. Sagona's last conclusion is contrary to the law, because Mr. Oreman can never meet any of the age/service criteria under 5 U.S.C. § 8336, since he separated from service at age 43. 5 U.S.C. § 8336 states:
(a) An employee who is separated from the service after becoming 55 years of age and completing 30 years of service is entitled to an annuity.
(b) An employee who is separated from the service after becoming 60 years of age and completing 20 years of service is entitled to an annuity. * * *
(f) An employee who is separated from the service after becoming 62 years of age and completing 5 years of service is entitled to an annuity.
*1156 However, it appears that counsel for Mr. Oreman misconstrues Mr. Sagona's point, which is that had Mr. Oreman continued working until age 60, he would have already met the service criteria for immediate annuity, having already worked over 26 creditable years by the time he was 43. Mr. Sagona also stated that had Mr. Oreman stayed working and worked past 60, he would have already achieved the maximum benefit computable under the applicable formula for retirement benefits. He agreed that had Mr. Oreman not retired at age 43, he would not have been required under law to retire at age 60, but could have worked longer. But he emphasized that Mr. Oreman had, in fact, started to collect disability retirement at age 43.
Peairs v. Peairs, upon which Mr. Oreman relies, declared that Mr. Peairs's normal retirement age was 65. However, Mr. Peairs was not a participant in the CSRS like Mr. Oreman. Mr. Peairs participated in his employers' own retirement plan. The opinion states that 65 was the normal retirement age under that plan without explanation of where that fact came from, and the "normal retirement age" was not an issue in that case.
The facts of this case and 5 U.S.C. § 8338(a) and (b) and 5 U.S.C. § 8336(b) support the trial court's conclusion that at age 60 the character of Mr. Oreman's benefits changed from disability to retirement. Accordingly, Mrs. Oreman is entitled to receive her marital share of those benefits from the date of Mr. Oreman's 60th birthday.
Next, Mr. Oreman argues that the court erred in making the judgment retroactive to April 18, 2005, the date of the trial court's second judgment (which was annulled by this Court in the previous appeal).[8] We agree. There is no authority cited for the inclusion of retroactivity language in the judgment, and we know of none. Therefore, that part of the judgment is reversed.
This Court notes that upon the representations of the parties, Mrs. Oreman has already received monthly payments from the OPM on the basis of a COAP sent to OPM following the April 18, 2005 judgment, which was devolutively appealed. This judgment was subsequently nullified by this Court in the first appeal, as described above, but it is not clear if OPM has continued to pay Mrs. Oreman under that judgment.
SURVIVOR'S BENEFITS
On appeal, Mr. Oreman argues that the trial court erred in finding that Mrs. Oreman was entitled to survivors' benefits under the CSRS plan, or, alternatively, that the entire cost of such a benefit should be borne 100% by him. Mr. Oreman argues that the applicable law, 5 U.S.C. § 8339(j)(5)(a)(ii), operated to rescind the survivor's benefit upon the parties' divorce. He argues that the parties have been divorced since 1996, and that such a benefit is entirely electable by him, but is not required under any state or federal law.
The record shows that when Mr. Oreman retired in 1987, the parties were still married, and that at that time, he elected a survivors' benefit for Mrs. Oreman. One of the trial exhibits, a print-out of Mr. Oreman's account, showed that as of November 1, 2004, Mrs. Oreman was listed as *1157 the surviving spouse beneficiary. Therefore, the record suggests that at least as of the time of trial, Mrs. Oreman was still entitled to a former spouse's survivor benefit because the election Mr. Oreman made at the time he retired on disability was still in effect. (Mr. Sagona testified that federal law permits this election to be dropped subsequent to a divorce.) There is no additional evidence or assertion that Mr. Oreman dropped the survivor's benefit election after trial in 2005.
This Court notes the language in 5 U.S.C. § 8339(j)(5)(A), which states:
(5)(A) Any reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee or Member shall be terminated for each full month 
(i) after the death of the spouse, or
(ii) after the dissolution of the spouse's marriage to the employee or Member, except that an appropriate reduction shall be made thereafter if the spouse is entitled, as a former spouse, to a survivor annuity under section 8341(h) of this title.
This suggests that Mrs. Oreman may not be entitled to a survivor's annuity as a result of the parties' divorce. We recognize that certain effects to Mrs. Oreman's right to a survivor benefit may be caused by the operation of federal law over which this Court has no control. To the extent that Mrs. Oreman may be eligible under federal law for the survivor's benefit, this Court affirms the trial court's award of this item, but the judgment cannot be construed to require Mr. Oreman to make such a selection.
Mr. Oreman argues that the trial court erred in ruling that the entire cost of Mrs. Oreman's survivor's benefit must be borne by him. He argues that this violates the equal division of community property principles of LSA-R.S. 9:2801. (Mr. Sagona testified that election of a survivor's benefit has the effect of reducing the amount of the monthly retirement benefit.)
In brief, Mrs. Oreman, citing federal law, argues that it permits a former spouse to have a survivor's benefit and also permits the entire cost of that benefit to be paid from the employee annuity. However, nowhere is it cited that federal or state law requires the divorced employee spouse to bear the entire cost of a survivor's benefit for a former spouse. Since this is the only community asset to be partitioned, we agree with Mr. Oreman's argument that requiring him to bear the entire cost of Mrs. Oreman's survivor benefit violates the equitable division principles of LSA-R.S. 9:2801. We hereby amend this portion of the judgment to state that to the extent federal law allows Mrs. Oreman a former spouse's survivor's benefit, the award is affirmed, the entire cost of which is to be borne by Mrs. Oreman. Mr. Oreman's share, as per Sims, of his monthly benefit shall not be reduced by the cost of the survivor's benefit.
Next, Mr. Oreman argues that the trial court erred in finding that Mrs. Oreman's community property share of the retirement benefit is heritable under Louisiana law. We find that the inclusion of such a provision in a community property partition goes beyond the scope of the relief prayed for. Such a right is controlled by applicable state and/or federal law and is not within the scope of this partition judgment. We hereby vacate this part of the judgment.
Mr. Oreman next argues that the trial court erred in Section 9 of the judgment when it ordered Mr. Oreman to assign 100% of all "Federal Employee Group Life Insurance" to Mrs. Oreman. We agree, and reverse this part of the judgment. *1158 Mrs. Oreman presented no evidence that a group life insurance benefit on Mr. Oreman's life existed. To the extent, however, that an earned retirement benefit concerning life insurance exists, Mrs. Oreman would be entitled to a credit for her Sims portion of the benefit if Mr. Oreman retained the benefits; likewise, Mr. Oreman would be entitled to a credit if the benefit were transferred to Mrs. Oreman.
Mr. Oreman contends that the trial court erred in the judgment when it held that Mrs. Oreman was eligible to enroll in Federal Employees Health Benefits Coverage. The evidence and testimony in the record, from Mr. Sagona, indicate that as a divorced spouse, Mrs. Oreman is eligible to enroll and apply for health benefits, as well as life insurance coverage, at her own expense, if she chooses to participate. Mr. Oreman does not offer any evidence in contradiction of this testimony. Accordingly, we see no error in this part of the judgment.
Likewise, Mr. Oreman argues that the trial court erred in Section 11 of the Judgment when it ordered Mr. Oreman to make an insurable interest election to create another annuity for Mrs. Oreman. This award is completely unsupported by any evidence presented at trial. Accordingly, it is reversed.
PEREMPTORY EXCEPTIONS FILED BY MR. OREMAN
Mr. Oreman has filed Peremptory Exceptions of Federal Preemption in this Court to Mrs. Oreman's claims regarding 1) entitlement to a share of Mr. Oreman's monthly retirement benefit prior to the time OPM has paid her under the court's judgment, and 2) her entitlement to a survivor's benefit.
Mr. Oreman's argument regarding the first item appears to be grounded in the fact that the trial court held that Mrs. Oreman is due her community share of the monthly retirement benefits from the date of Mr. Oreman's 60th birthday. He argues that she has no claim, under federal law, to those payments already distributed.
This Court notes that Mr. Sagona testified that all COAPs and payments made thereunder are prospective only, and that OPM will not recapture payments. Counsel for Mr. Oreman argued that federal law preempted Mrs. Oreman's claim to ownership of monies already disbursed by OPM. We find no authority for that position. Mrs. Oreman's rights to Mr. Oreman's retirement benefits are established by Louisiana community property law. Federal preemption may prevent a judgment against OPM concerning the allocation of community funds, but federal preemption does not prevent offsetting credit or debit in partition distributions based on prior benefit distribution. Accordingly, we deny these Peremptory Exceptions.
ANSWER TO APPEAL
Mrs. Oreman answered the appeal, arguing first that Mr. Oreman's appeal was premature because the trial court failed to rule on each of Mrs. Oreman's requests for relief. We find no authority for that position. Generally, when a judgment is silent as to a claim or demand, it is presumed that the relief sought was denied. Barham & Arceneaux v. Kozak, 02-2325, p. 15 (La.App. 1 Cir. 3/12/04), 874 So.2d 228, 241, writ denied, 04-0930 (La.6/4/04), 876 So.2d 87. Therefore, this appeal is not premature simply because the judgment was silent regarding several of Mrs. Oreman's requests for relief.
We find merit in Mrs. Oreman's position that the trial court erred in failing to recognize her claim for reimbursement from Mr. Oreman for her community property share of those monthly retirement benefits he has received since his 60th *1159 birthday. We find that Mrs. Oreman is entitled to her marital share of all Civil Service Retirement System benefit payments that Mr. Oreman has received from July 19, 2003, with legal interest on each payment from the date of receipt until paid in full.
The parties have represented in brief and in the record that Mrs. Oreman has already received some of her share of the monthly payments under a COAP presented to OPM following the trial court's April 18, 2005 judgment. (This judgment was nullified by this Court in the first appeal.) No evidence or representations were made regarding how many payments Mrs. Oreman has already received or whether such payments have continued following this Court's nullification of that judgment. This Court has no evidence before it to make such calculation. Accordingly, we remand for the trial court to determine the sum due to her from Mr. Oreman.
We find no merit in Mrs. Oreman's request that she be awarded sanctions and attorney's fees. We hereby deny that portion of her requested relief.
MOTION TO DISMISS DEVOLUTIVE APPEAL
Mrs. Oreman filed a Motion to Dismiss Gary Oreman's Devolutive Appeal of the judgment of March 23, 2007. This judgment granted several of Mrs. Oreman's Exceptions she filed in response to Mr. Oreman's Rule and Petition for Preliminary Injunction, and resulted in the dismissal of Mr. Oreman's Rule. Mrs. Oreman argues that the appeal must be dismissed because there was no signed judgment at the time the appeal was taken, only Reasons for Judgment, and thus the appeal is premature. Second, and in the alternative, she argues that the judgment is interlocutory and not final, and hence there is no right to appeal.
The following time line in this case is instructive. The hearing was held on March 23, 2007, with the judge ruling from the bench that day, granting several of Mrs. Oreman's Exceptions and dismissing Mr. Oreman's petition. Mr. Oreman moved for a Devolutive Appeal on March 27, 2007. The trial court signed written Reasons for Judgment on April 3, 2007, at plaintiffs request, but these reasons contained no rendering language, and thus do not constitute a written judgment.[9]
On July 20, 2007, Mrs. Oreman filed the Motion to Dismiss Gary Oreman's Devolutive Appeal in this Court. On July 31, 2007, Mr. Oreman filed, in the trial court, an Ex Parte Motion for formal entry of Judgment, requesting a written judgment. The trial court issued a Rule to Show Cause on August 14, 2007, ordering the parties to appear on August 21, 2007 for a contradictory hearing on whether the trial court could sign a judgment pursuant to Mr. Oreman's Ex Parte Motion. Following that hearing, the trial court signed a written Judgment on August 24, 2007, which reflected the ruling from the bench on March 23, 2007.
Thereafter, Mrs. Oreman filed Writ No. 07-C-659 in this Court, asking that this Court vacate the trial court's ruling of August 21, 2007 that it could now sign a written judgment, and vacate the written judgment signed on August 24, 2007.
For the following reasons we deny the Motion to Dismiss Appeal. LSA-C.C.P. art. 3612 states that an appeal may be taken as a matter of right from an order or judgment relating to a preliminary or *1160 final injunction. Clearly, Mr. Oreman has the right to appeal the dismissal of his Rule and Petition for Mandatory Preliminary Injunction, as this is a judgment relating to a preliminary injunction. New Orleans Hat Attack, Inc. v. New York Life Ins. Co., 95-0055 (La.App. 4 Cir. 11/30/95), 665 So.2d 1186; Sessions, Fishman & Nathan, L.L.P. v. Salas, 04-1790 (La.App. 4 Cir. 5/25/05), 905 So.2d 373.
Mrs. Oreman next argues that this appeal should be dismissed because the appeal is premature. She argues that appeal delays do not run until the trial court signs a judgment, and since there was no signed judgment on March 27, 2007, when Mr. Oreman filed his Motion for Appeal, the appeal should be dismissed. She also argues, in her Writ No. 07-C-659 that the trial court lacked jurisdiction on August 24, 2007, to sign a judgment, since jurisdiction had been divested upon the filing of the Motion for Appeal on March 27, 2007. Mr. Oreman argues that the reasoning in Overmier v. Traylor, 475 So.2d 1094 (La. 1985) and its progeny support his position, while Mrs. Oreman argues that Zion v. Stockfieth, 514 So.2d 224 (La.App. 5 Cir. 1987), which distinguished Overmier, supports hers.
Mrs. Oreman is correct that the appeal delay under LSA-C.C.P. art. 3612 does not commence to run on a judgment relating to a preliminary injunction until a judgment is signed. Marlbrough v. Zar, 98-38 (La.App. 5 Cir. 5/27/98), 713 So.2d 1163. However, the inquiry does not end here. We find that Overmier and Zion are factually distinguishable, and that Overmier controls here.
Overmier held that an appeal regarding a preliminary injunction was premature where it was taken following the issuance of an "opinion," prior to the signing of the judgment, and was subject to dismissal, but once the final judgment was signed, the jurisdictional defect was cured and the appellate court should have entertained the judgment rather than dismissed it. The court held that the correct interpretation of LSA-C.C.P. art. 1911 is that an appeal granted before the signing of a final judgment is subject to dismissal until the final judgment is signed. The court noted that appeals are favored in law, and the Articles of the Code of Civil Procedure are to be construed liberally: "[R]ules of procedure implement the substantive law and are not an end in themselves."
In the instant case, the oral judgment or ruling was made on March 23 and the Motion for Appeal filed on March 27, which was timely, though premature, under LSA-C.C.P. art. 3612. Mrs. Oreman's Motion to Dismiss Devolutive Appeal was filed in this Court on July 20, 2007. Prior to our ruling on that motion, Mr. Oreman secured a signed judgment from the trial court on August 24, 2007, which cured the jurisdictional defect. Mr. Oreman's appeal was premature and subject to dismissal prior to the trial court's signing of the judgment on August 24, 2007. Since that judgment has now been signed,[10] the appeal is no longer premature. We deny Mrs. Oreman's Motion to Dismiss, and now consider the merits of Mr. Oreman's devolutive appeal. See also Perkins v. Salas, 507 So.2d 827 (La.App. 5 Cir.1987).
Likewise, we deny Mrs. Oreman's Writ No. 07-C-659, which asks that this Court vacate the trial court's ruling of August 21, 2007 that held it could sign a written judgment, and also asks us to vacate the written *1161 judgment signed on August 24, 2007. Clearly, under Overmier and other cited cases, the trial court retained jurisdiction to sign a written judgment even after a Motion for Appeal had been granted from an oral ruling.[11]
DEVOLUTIVE APPEAL
The trial court erred in granting Mrs. Oreman's Exceptions of Prematurity and Preemption to Mr. Oreman's Rule and Petition for Mandatory Preliminary Injunction. Mr. Oreman filed this Rule and Petition, arguing that counsel for Mrs. Oreman violated LSA-C.C.P. article 2252 by sending the COAP to OPM prior to the expiration of the suspensive appeal delays of the February 7, 2007 judgment. His position has merit.
The trial court granted the Exception of Prematurity, finding that Mr. Oreman had not yet filed a Suspensive Appeal at the time he filed his Rule and Petition for Mandatory Preliminary Injunction. However, this finding, while true, misses the point of the request for the injunction. LSA-C.C.P. art. 2252 states:
A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed; however, recordation of a judgment in the mortgage records prior to the lapsing of the delay for a suspensive appeal does not begin proceedings for the execution of the judgment.
This language in this article is clear. It does not require a defendant to have actually taken a suspensive appeal. It prohibits a judgment creditor from taking any steps in the execution of a judgment during the suspensive appeal delays, without regard for the defendant's actions during that time. Accordingly, the trial court's reasons for granting the Exception of Prematurity are flawed and incorrect. The Petition for Mandatory Preliminary Injunction was not premature.
Likewise, the trial court erred in granting Mrs. Oreman's Exception of Preemption. The trial court found that it had no authority to enjoin a federal agency. The Petition, however, did not seek to enjoin the OPM or any other federal agency. It sought to enjoin counsel for Mrs. Oreman from proceeding with the execution of the February 7, 2007 judgment prior to the expiration of suspensive appeal delays.
Having found that the trial court erred in granting these Exceptions, we find the trial court should have considered the merits of the Rule and Petition for Injunction. Therein, Mr. Oreman argued that Mrs. Oreman's counsel's act of sending the COAP to OPM, based upon the February 7, 2007 judgment, within the suspensive appeals delays pertinent to that judgment, constituted a violation of LSA-C.C.P. art. 2252.
LSA-C.C.P. art. 2252 itself tells us that recordation of a judgment in the mortgage records prior to the lapsing of the delay for a suspensive appeal does not begin proceedings for the execution of the judgment, because by such an act, the judgment creditors were merely protecting their privileges as to any immovable property that the debtor might own in the parish. Jurisprudence holds that other acts, such as the issuance of a writ of fieri facias and garnishment proceedings in execution of judgment, are not permitted. Succession of Griffith, 411 So.2d 55 (La. App. 4 Cir.1981), writ denied 420 So.2d 443 *1162 (La.1982.). We find that sending the COAP to OPM is the necessary first step in OPM's process that ultimately results in payments of the monthly benefits to Mrs. Oreman; hence, it is clearly a step in the execution of the judgment, and is clearly prohibited within the suspensive appeal delays by LSA-C.C.P. art. 2252.
We find that Mr. Oreman personally has not proven damages. It appears from representations of the parties in brief that OPM has not yet processed the latest COAP. Further, this Court herein recognizes Mrs. Oreman's right to her portion of the monthly benefit paid to Mr. Oreman since his 60th birthday, which occurred on July 19, 2003.
We decline to grant Mr. Oreman's Rule for Contempt against Mr. Prados, counsel for Mrs. Oreman, though we reiterate, in the strongest terms, that his actions in sending the COAP to OPM prior to the expiration of the suspensive appeal delays did constitute a violation of LSA-C.C.P. art. 2252, and caution him against such an action in any case in the future. We also caution against presenting draft judgments to the trial court containing misstatements concerning the consent of the parties.
CONCLUSION
We find that that Mr. Oreman's disability retirement benefits became a divisible community asset at his 60th birthday.
We amend paragraphs 5 and 6 of the trial court's judgment of February 7, 2007, which awarded Mrs. Oreman a survivor annuity at Mr. Oreman's cost. To the extent that Mrs. Oreman may be eligible under federal law for a survivor benefit, notwithstanding that Mr. Oreman cannot be compelled to select survivor benefits, and elects to receive those benefits, the entire cost of that benefit is to be borne by Mrs. Oreman.
We vacate Paragraphs 7 (heritable rights), 9 (assignment of group life insurance benefit), and 11 (insurable interest election) of the February 7, 2007, as they are not supported by any evidence presented at trial.
We vacate the language giving the February 7, 2007 judgment retroactive effect to April 18, 2005.
All other portions of the February 7, 2007 judgment are affirmed.
Mrs. Oreman is awarded her community portion of any retirement benefits paid to Mr. Oreman after his 60th birthday, with interest from the date received. Mr. Oreman is liable to her for these amounts paid to Mr. Oreman by OPM.
The parties are ordered to meet for the purpose of preparing a Community Property Partition Judgment in compliance with this opinion, and shall submit it to the trial court for consideration. If the parties cannot agree to mutually satisfactory language, Mrs. Oreman shall schedule a contradictory Rule before the trial court for the purpose of resolving any conflicts stemming from the Partition that cannot be resolved by the parties in accord with this decision.
We deny the Motion to Dismiss Devolutive Appeal and reverse the judgment of March 23, 2007, that granted the Exceptions of Prematurity and Federal Preemption. We deny the Rule for Contempt.
JUDGMENT OF FEBRUARY 7, 2007 AFFIRMED IN PART, AMENDED IN PART, AND REVERSED IN PART; PEREMPTORY EXCEPTIONS DENIED; MOTION TO DISMISS DEVOLUTIVE APPEAL DENIED; JUDGMENT OF MARCH 23, 2007 REVERSED IN PART, AFFIRMED IN *1163 PART; AND JUDGMENT RENDERED.
NOTES
[1] Oreman v. Oreman, 05-955 (La.App. 5 Cir. 3/31/06), 926 So.2d 709, writ denied 06-1130 (La.9/1/06), 936 So.2d 206.
[2] Trial was held before the Honorable Joseph M. Tiemann, Judge Pro Tempore. By the time the Motion for New Trial was filed, a new judge, the Honorable June B. Darensbourg, had been duly elected to that division.
[3] 07-C-22 (1/31/07).
[4] This judgment is substantially the same as the April 18, 2005 judgment.
[5] At oral argument, counsel for Mr. Oreman argued that Mr. Oreman was not eligible to retire under federal law until he reached the age of 62, rather than 65, which he argues in brief on appeal.
[6] We note that the original Judgment of Partition, dated September 30, 1996, was in fact a consent judgment, but this judgment was silent regarding Mr. Oreman's federal retirement benefits.
[7] From 5 U.S.C. § 8337(c) and (d). These criteria are also found in the original appeal record, in Exhibit A, "Information about Disability Retirement (FERS)," p. 115.
[8] This Court notes that the trial court's judgment of April 18, 2005 was devolutively appealed (and subsequently annulled by this Court). The parties have stated in brief that Mrs. Oreman is currently being paid that judgment by OPM under a Court Order Acceptable for Processing that was submitted to OPM following the suspensive appeal delays on that judgment.
[9] Vintage Contracting, L.L.C. et al v. Dixie Building Material Company, Inc., 03-422 (La. App. 5 Cir. 9/16/03), 858 So.2d 22.
[10] On August 28, 2007, Mr. Oreman filed a Motion to Supplement the record with the trial court's written judgment of August 24, 2007, and to supplement his Opposition to Mrs. Oreman's Motion to Dismiss. This Court granted the Motion to Supplement on August 29, 2007.
[11] The statutory list of enumerated exceptions to the divestment of trial court's jurisdiction once the appeal has been perfected is not exclusive. Blanchard v. Missouri Pacific R. Co., 95-1385 (La.App. 3 Cir. 6/26/96), 676 So.2d 779, writ denied 681 So.2d 1269, XXXX-XXXX (La.11/1/96).