STEPHEN J. WINDHORST, Judge.
^Appellants, Philip J. Cambre and Dutch Bayou Development Co., Inc.[1] (“Dutch Bayou”), appeal from the trial court’s judgment awarding them $4,080.00 in damages for breach of contract claims against St. John the Baptist Parish (“the Parish”). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY:

Appellants filed this suit against the Parish seeking to enforce the provisions of a contract and for damages for breach of contract. This case involves property located in Reserve, Louisiana that was part of an original land grant to the Cambre family. The property initially ran from the river to the 80 arpent line north of Airline Highway. Over the years, the property was divided into several lots wherein various lots were sold for commercial [2] or public[3] use and the remaining lots were sold to Dutch Bayou. The breach of contract claims in this lawsuit involve prior litigation between the parties and disputes involving Lots 2, 3, and 5 and Cambre Road.[4]
*76 Suit No. 1: 40th Judicial District Court, Case No. 34,448, Nature Land Co., L.L.C. v. Dutch Bayou Development Co., Inc. and Philip Cambre:
On October 30, 1995, Nature Land Co., L.L.C. (“Nature Land”) filed a petition for preliminary and permanent injunction and possessory action against Dutch Bayou and Mr. Cambre, claiming it had possessed Cambre Road for over 30 years and therefore was entitled to judgment granting Nature Land the right of possession. On October 28, 1998, the trial court ordered Nature Land to pay Dutch Bayou compensation in the amount of $7,500.00 for a “personal servitude, right of use” of Cam-bre Road with the ability to assign and sublet.[5] However, the judgment precluded Nature Land from receiving any consideration for subletting or assigning use of Cambre Road up to the 80 arpent line. Additionally, Nature Land was required to give Dutch Bayou advance notice of any assignment or sublet. The judgment further provided that the Cambre family, heirs, and assigns, retained the right to negotiate with third parties who used the road “to the northern end of the 80 arpent line for commercial gain (not limited to monetary gain).”
Suit No. 1 is replete with complaints and cross-motions by Nature Land, Dutch Bayou and Mr. Cambre concerning negotiating the use of Cambre Road with third party defendant, Cypress Ridge Hunting Club (“CRHC”), a lessee of Nature Land. This case is still pending in the district court.
Suit No. 2: 40th Judicial District Court, Case No. 52,293, Philip Cambre v. St. John the Baptist Parish:
Thereafter, the Parish executed a 99-year lease commencing on May 15, 2006 to the Louisiana National Guard for the purpose of constructing a building on the road servitude leading from Airline Highway to Cambre Road. Mr. Cambre filed suit against the Parish claiming that the lease as confected blocked his access |4to Lots 2, 3 and 5. Mr. Cambre argued that the right of way servitude had belonged to the Cambre family since 1942 and was subsequently owned by Dutch Bayou. On November 22, 2006, Suit No. 2 was settled and resulted in the Parish, Mr. Cambre and Dutch Bayou[6] executing a “Full Release.” At the same time, Mr. Cambre and his wife executed a Quitclaim Deed and sold Lots 2 and 3 and Cambre Road to the Parish.
In the Full Release the Parish agreed that it would:
1. Not intervene in any way in [Suit No. 1] (“Item 1”);
2. Allow Dutch Bayou Development Co., Inc., its successors and assigns, and/or officers access to Lot 5 through currently existing points, which may include the levee access point at the end of Airport Road or such other points of access that may become available in the future (“Item 2”); and
3. Allow Philip J. Cambre and others to enter upon the property that is the subject of this suit and sale for the sole purpose of removing all or part of the camps located on this property and for the removal of fire *77 wood for the personal use of said Philip J. Cambre, through the end of 2006 and if necessary, to be extended, the removal of the camps, using the alternate routes until the 31st day of March, 2007 (“Item 3”).
The present litigation: 40th Judicial District Court, Case No. 54,197, Philip J. Cambre v. St. John the Baptist Parish:
On August 3, 2007, Mr. Cambre and Dutch Bayou filed this suit against the Parish claiming that the Parish breached the three stipulations as set forth in the Full Release executed in Suit No. 2. Mr. Cambre claimed that the Parish breached Item 1 by intervening in Suit No. 1 and allowing CRHC use of Cambre Road. Dutch Bayou claims that Item 2 was breached by the Parish when Dutch Bayou was denied access to Lot 5. Mr. Cambre further claimed that Item 3 was breached by the Parish when he was denied access to remove his camps which resulted in subsequent damages. In a supplemental and amending petition, Dutch Bayou |sfurther claimed that it was entitled to compensation for the “taking” of the bridge that crosses over the drainage canal south of the protection levee near Cambre Road and that allows access to Lot 5 and the camps.
The property involved is located north of Airline Highway and south of the 80 ar-pent line, specifically Lots 2, 3 and 5 which are north of the drainage canal. Prior to trial, the trial judge, parties and counsel visited the property and observed the access routes, and gates that were central to the merits of Mr. Cambre and Dutch Bayou’s claims. Trial on the merits was held on August 22, 23, and 24, 2011. Evidence included the court visiting and viewing some of the property.
The trial court rendered judgment on September 19, 2011. The trial court found that the Parish did not intervene in any way in Suit No. 1 and thus, did not violate Item 1 in the Full Release in Suit No. 2. The trial court found that the Parish did not violate Item 2 and that appellants had access to Lot 5 at all times. The trial judge further found that the Parish violated Item 3 and committed a partial breach of Item 3 of the Full Release in Suit No. 2, when the appellants were partially denied access to remove the camps. However, the trial court found that the appellants failed to mitigate their damages and allocated 75% of the fault to appellants. The trial court determined the camps to be valued at $16,320.00. The trial court rendered judgment in favor of appellants and against the Parish in the amount of $4,080.00 in damages for the breach of contract claim which was the value of the camps reduced by 75% for appellants’ fault. This appeal followed.

LEGAL ANALYSIS:

A determination of fact is entitled to great deference on review. McGlothlin v. Christus St. Patrick Hosp., 10-2775 (La.7/1/11), 65 So.3d 1218, 1230. Factual findings of a trier of fact may not be disturbed by an appellate court absent manifest error. Allerton v. Broussard, 10-2071 (La.12/10/10), 50 So.3d 145, 145, reconsideration denied, 10-2071 (La.1/28/11), 56 So.3d 974. To reverse a fact finder’s determination of facts, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes the trier of fact is manifestly erroneous or clearly wrong. Id.; S.J. v. Lafayette Parish School Bd., 09-2195 (La.7/6/10), 41 So.3d 1119, 1127. Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the reviewing court may feel *78 that its own evaluations and inferences are more reasonable. McGlothlin, 65 So.3d at 1231; Allerton, 50 So.3d at 145; Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
In their first assignment of error, appellants claim that the trial court erred by not finding that the Parish intervened[7] in Suit No. 1. Appellants assert that the trial court did not consider evidence that the Parish interfered with Mr. Cambre’s attempts to negotiate with third party defendant, CRHC, in Suit No. 1. Secondly, appellants contend that the trial court mistakenly concluded that the Quitclaim Deed and Full Release executed in Suit No. 2 effectively settled Suit No. 1. Finally, appellants claim that the trial court’s interpretation of the Full Release in Suit No. 2 rendered Item 1 of that Release meaningless.
Mr. Cambre first contends that the Parish intervened in Suit No. 1 by allowing CRHC use and control of the ingress and egress of Cambre Road. At trial, the Parish acknowledged that permission to use Cambre Road was given to CRHC after the execution of the Quitclaim Deed in favor of the Parish and the Parish became the owner of Lots 2 and 3 and Cambre Road. In its reasons for judgment, the trial court found that Mr. Cambre and his wife failed to reserve any |7ownership rights or right of use to Cambre Road in the Quitclaim Deed, except for the limited access granted in the Full Release.
Appellants also contend that the trial court mistakenly confused this case with prior litigation. Appellants claim that in the reasons for judgment the trial court incorrectly stated that the Quitclaim Deed and Full Release were “in effect a settlement” of Suit No. 1 and incorrectly found that Suit No. 1 was “no longer a viable lawsuit subject to intervention.” Appellants argue that the Full Release and Quitclaim Deed settled Suit No. 2, but not Suit No. 1. Moreover, appellants claim that the Parish is not a defendant in Suit No. 1 and that case is still pending in district court.
Appellants finally claim that the trial court’s interpretation of the Full Release in Suit No. 2 rendered Item 1 in that release meaningless. Specifically, appellants assert that they would not have agreed to exclude the Parish as a defendant, nor would they have added Item 1 if there was no longer a viable suit at the signing of the Full Release in Suit No. 2.
Appellate courts review the correctness of the judgment, rather than the reasons for the underlying judgment. Noto v. Noto, 09-1100 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1181. In Schurr v. O’Dwyer, 09-24 (La.App. 5 Cir. 9/3/09), 22 So.3d 959, 960, the court stated:
La. C.C.P. art. 1841 provides that appeals lie from final judgments only. A final judgment “determines the merits in whole or in part,” while an interlocutory judgment “does not determine the merits but only preliminary matters in the course of the action.” See also New Orleans Firefighters Ass’n Local 632 v. City of New Orleans, 99-0011 (La.App. 4 Cir. 11/24/99), 750 So.2d 1069, 1072. Written reasons for judgment are considered to be interlocutory rulings and do not cany the finality of a judgment. Taylor v. Brandner, 05-970 (La.App. 5 Cir. 4/25/06), 928 So.2d 751, 755 (citing Davis v. Farm Fresh Food Supplier, 2002-1401 (La.App. 1 Cir. 3/28/03), 844 So.2d 352, 354). Appellate courts review *79 the correctness of the judgment, rather than the reasons for the underlying judgment. Irsch v. Argonaut Great Cent. Ins. Co., 02-988 (La.App. 5 Cir. 1/28/08), 841 So.2d 831, 841. Likewise, the trial court’s reasons for judgment, while defining the principles upon which the court is deciding a case, form no part of the official judgment signed and from which appeals are taken. La. C.C.P. art.1917, art.1918; Vintage Contracting, L.L.C. v. Dixie Bldg. Material Co., Inc., 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, 30.
The record establishes that Mr. Cambre consistently represented himself in proper person in this suit and in the prior litigations mentioned herein, with occasional advice or consultation with attorneys. Mr. Cambre was an active participant in the negotiations that occurred with the Parish and was fully aware of the language used in the Full Release in Suit No. 2. Mr. Cambre and his wife transferred, sold, and assigned all of their rights and title to Lots 2 and 3 and Cam-bre Road to the Parish, except for the limited access stated in the Full Release in Suit No. 2. They did not reserve any ownership rights or right of use to Cambre Road. The Parish owned Cambre Road without any restrictions after execution of the Quitclaim Deed. Any rights that Mr. Cambre may have against third party defendant, CRHC, in Suit No. 1 prior to execution of the Quitclaim Deed are not determinative as to whether the Parish intervened in Suit No. 1 by allowing CRHC to use Cambre Road after the Parish became owner of the road.
The Parish owned the road at the time it allowed use by CRHC. Thus, the Parish did not interfere in any right of compensation that Mr. Cambre had for use of the road when he was still owner, as asserted in Suit No. 1. We find that the trial court was not manifestly erroneous in finding that the Parish did not intervene or interfere in Suit No. 1. This assignment of error is without merit.
In their second assignment of error, appellants argue that the trial court erred in finding the Parish did not violate Item 2 of the Full Release in Suit No. 2 and in finding that Dutch Bayou, and its successors and assigns, or officers had access to Lot 5 at all times. Appellants contend that the trial court failed to acknowledge that the Parish refused to allow rear access to Lot 5 via Cambre Road and the | ¡¡canal. Appellants next assert that the trial court erred in not concluding that any access appellants had via the protection levee was meaningless. Appellants finally claim that locked gates along the access routes prevented appellants from having access to Lot 5.
In the Full Release in Suit No. 2, Item 2 provided permanent access to Lot 5 for the owner, Dutch Bayou, its successors and assigns, and/or officers. Specifically, Item 2 provided that the Parish:
2. [Would] allow Dutch Bayou Development Co., Inc., its successors and assigns, and/or officers access to Lot 5 through currently existing points, which may include the levee access point at the end of the Airport Road or such other points of access that may become available in the future.
In the reasons for judgment, the trial court laid out the applicable routes that allowed appellants access to Lot 5 and the gates contained within those access routes, namely:
Direct Route: Shorter and more direct, from New Road (and previously Old Road) to Bridge over drainage canal; requires passage through Gates Nos. 1 and 2.
*80 Alternative Route: Longer, roundabout route utilizing Airport Road toward 80 Arpent Line, and then by drainage servitude levee which eventually reaches and abuts lot 5; requires passage through Airport Road Gates la and lb, and Gate No. 2.
The trial court further described the location of the gates encountered along the above access routes as follows:
Besides the Airport Road Gates la and lb,[8] there were also three gates at the intersection of the drainage canal and the north-south bridge which crosses it. These gates were labeled on Exhibit Court-1 as:
Gate No. 1: — directly on the bridge but toward the south;
Gate No. 2: — on the levee, separating east from west; and
Gate No. 3: — north of the drainage canal and levee, at Cambre Road.
| inThe record establishes that after the Full Release was executed, the National Guard absorbed the Old Road, by which appellants had previously accessed their property, and closed it to the public February 2007. Upon closure of the Old Road, appellants were provided temporary access to their property by a private landowner located south of Airport Road Gates la and lb until the New Road was built in 2008. The trial court found that this route led to Gate 1 and the bridge over the drainage canal.[9] Mr. Cambre received keys to Airport Road Gates la and lb in April 2007.
Mr. Cambre testified that he was never given a key to Gate 2 even though a parish lock was on the gate. Witnesses testified and the trial court found that Gate 2 was always open. Mr. Cambre further testified that the Parish’s failure to maintain the grass made Gate 2 and its route inaccessible. Mr. Cambre did not testify that he attempted to access Gate 2 and was unable to pass through because it was locked.
Mr. Cambre testified that he did not receive a key that worked on Gate 1 until April of 2010. In contrast, witnesses for the Parish testified that they were provided a key to Gate 1, but the gate was often left open.
Mr. Cambre was the only witness to testify that an “old logging road” existed and that appellants should have had access to it, but he testified that the route is now blocked with metal posts and completely overgrown. He could not provide the court with any map or survey that showed the existence of the “old logging road.”[10] The trial judge conducted an on-site visit of the location where Mr. Cambre alleged the “old logging road” existed. The trial judge found that the | ^ground near Gate 3 was “slightly cleared” a few feet east of the gate, but then it became “completely overgrown.” The trial court further found that the “old logging road” was not blocked and in fact did not exist.
The Full Release in Suit No. 2 provided that appellants would have access through currently existing routes such as *81 access via the levee at the end of Airport Road or through alternative routes that may become available in the future. The language provided that appellants would be given access, not that appellants would be given access through a route appellants preferred to the exclusion of another route. The trial court found that appellants were provided with continuous access to Lot 5 at all times through the various available routes, and thus, the Parish did not violate item 2 in the Full Release in Suit No. 2. The trial court is presumed to have denied appellants’ claim regarding rear access to Lot 5 because it was not specifically addressed. When a judgment is silent as to a claim or demand that was litigated, it is presumed to be deemed denied by the trial court. Oreman v. Oreman, 07-296 (La.App. 5 Cir. 10/30/07), 971 So.2d 1149, 1158.
Considering the evidence and testimony, we find that the trial court was not manifestly erroneous or clearly wrong in finding that appellants had access to Lot 5 at all times and further finding that the “old logging road” did not exist. We further find that the trial court denied Mr. Cam-bre’s claim of an access route via Cambre Road to the canal since it is not specifically addressed, and the trial court was not manifestly erroneous in denying this claim. This assignment of error is without merit.
In appellants’ third assignment of error, they contend that the trial court erred in finding appellants failed to mitigate their damages in removing the camps and in allocating fault to them of 75%. Appellants claim that the trial court erred lii.in apportioning the “lion’s share” of fault to appellants for failure to timely remove the camps and then reducing the damages awarded by that percentage of fault.[11]
A trier of fact is vested with great discretion in its allocation of fault. Phipps v. Allstate Ins. Co., 05-651 (La.App. 5 Cir. 2/27/06), 924 So.2d 1081, 1085. Allocation of fault is a finding of fact which will not be reversed absent a finding of manifest error. Id.
The record establishes that the routes used to access the camps are the same as those used to access Lot 5, but require entrance through different gates.
Mr. Cambre testified extensively as to why appellants were unable to timely remove the camps. Mr. Cambre testified that the delay and subsequent damage to the camps was due solely to the fault of the Parish. Mr. Cambre testified that Barry Jacobs and others were able to access the property from November 2006 until closing of the Old Road in February 2007. Subsequent to the Old Road closing and the New Road opening, Mr. Cambre and others were given access to their property by crossing through a private landowner’s property which led to Gate 1 and the bridge over the canal. The trial court found that Mr. Cambre had access to the camps via the alternative route after April 2007.
Mr. Cambre claims that access was denied because he periodically did not have keys to open certain gates. The trial court found that whether Mr. Cambre had keys or not, he was able to access Gates 1 and 3 from November 2006 through February *82 2007. The trial court further found that while there were some periods of time that appellants were not able to access the camps from November 2006 |1sthrough July 2007, appellants had sufficient access to partially remove the camps to prevent a complete loss.
It is clear that appellants and CRHC have had an acrimonious relationship since the filing of Suit No. 1. The parties have engaged in cutting off each other’s locks, putting on new locks, gluing the locks together, digging trenches in the road, and calling police and having each other arrested. Appellants were initially given until March 31, 2007 to remove the camps in the Full Release, and then an extension of an additional 4 months. Regardless, Mr. Cambre had no problems accessing the property from November 2006 through February 2007, but he failed to remove the camps. Mr. Cambre had only the roof removed from camp # 1 during that time period.
Given the evidence at trial, the trial court’s allocation of fault was neither unreasonable nor manifestly erroneous. We find that the trial court did not err in finding that Mr. Cambre had sufficient access to partially remove the camps to prevent a total loss, and that he failed to remove the camps timely. The trial court was in the best position to weigh the evidence and credibility of the witnesses. We find no error in the trial court’s judgment assessing 75% fault to appellants for the delay and subsequent damages for failure to timely remove the camps. This assignment of error is without merit.
In appellants’ fourth assignment of error, they contend that the trial court erred in determining that the Parish’s expert appraiser’s value was correct in assessing the value of the camps that sustained damage. Expert real estate appraisers for both parties testified as to the value of the loss of the camps and value of any denial of access rights. Appellants’ expert, George Corcoran, was qualified as an expert real estate appraiser. The Parish’s expert, Bennett Oubre, | uwas qualified as a general expert real estate appraiser with considerable experience in the field of evaluation of personal property.
Mr. Corcoran testified he approached the determination of value from a replacement cost point of view. He visited the site and extensively interviewed Mr. Cam-bre. Mr. Corcoran testified that camp 1 (closest to the road) was burned down and camp 2 (set further back on Lot 3) was collapsed, fully deteriorated, and uninhabitable. He conceded that he only viewed camp 2 from twenty to thirty feet away because of its condition. Because of the conditions of the property, he testified that he relied on information given to him from Mr. Cambre as to the condition, materials, and furnishings to help aid in his determination of the value of the camps. When discussing the value for any denial of access rights, Mr. Corcoran acknowledged that he did not see any documentation or evidence showing a right of easement off the bridge. Mr. Corcoran also conceded that during his visit he did not see a road. He relied on the information provided by Mr. Cambre in determining that an access route existed to the rear of Lot 5. Mr. Corcoran valued the camps to be over $76,815.00 total.
Bennett Oubre testified that he used the market approach to determine the value of the camps and the value for any denial of access rights. Mr. Oubre testified that he made an on-site visit to the property, but he utilized Mr. Corcoran’s report for the basis of the condition of the property, the size of the property, photographs of the property, and information provided by Mr. Cambre to determine the values. Mr. Ou- *83 bre valued the camps to be $16,320.00 total.
Mr. Cambre testified that he owned both camps. He further testified that he paid Barry Jacobs $5,000 for camp 1.
The trier of fact is required to assess the credibility of both expert and lay witnesses to determine the most credible evidence. Johnson v. E.I. DuPont deNemours & Co., Inc., 08-628 (La.App. 5 Cir. 1/13/09), 7 So.3d 734, 741, citing Magee v. Pittman, 98-1164 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 742, writ denied, 00-1684 (La.9/22/00), 768 So.2d 602. Appellate courts apply the manifest error standard in deciding conflicts between expert and lay testimony. Id., citing St. Martinville, L.L.C. v. Louisiana Tax Commission, 05-457 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 44. The reviewing court must determine not whether the factfinder was right or wrong, but whether his finding was a reasonable one. Id., citing St. Martinville, 917 So.2d at 44; Stobart, 617 So.2d at 883 (La.1993). See also, Galen-Med, Inc. v. Porter, 05-0788 (La.App. 4 Cir. 3/29/06), 928 So.2d 681, 688-689; State, Dept. of Transp. & Development v. Biscomb, 47,223 (La.App. 2 Cir. 6/20/12), 94 So.3d 193, 197; Goudia v. Mann, 11-960 (La.App. 5 Cir. 5/22/12), 98 So.3d 364; Lasyone v. Kansas City S. R.R., 00-2628 (La.4/3/01), 786 So.2d 682.
Mr. Oubre’s valuation was based upon the market approach and Mr. Corcoran’s valuation was based on a replacement cost approach. Both experts were qualified as expert real estate appraisers, but Mr. Ou-bre was noted to have considerable experience in personal property. Testimony was elicited from several witnesses that the condition of the camps was medium to poor or in deplorable condition, whereas Mr. Cambre and his wife testified that the camps were in good condition. The trial court was in the best position to weigh the credibility of the expert and lay witnesses. We find that the trial court’s reliance on the lower appraisal value given by Mr. Oubre was not manifestly erroneous or clearly wrong. Therefore, this assignment of error is without merit.
In appellants’ fifth assignment of error, they claim that the trial court erred in denying their motion for new trial concerning the issues of bridge ownership and rear access to Lot 5 via Cambre Road and the canal. Specifically, appellants |1ficontend that the evidence and testimony established that the bridge was built by Atlantic Refining Co in 1942 on Cambre property and was maintained by the Cam-bre family or lessees. Mr. Cambre testified that in 1995 when he and his brother sold property to Dutch Bayou, they transferred ownership of the bridge to Dutch Bayou. Mr. Cambre further testified that over the years the Parish disavowed ownership of the bridge. He testified that payment by third parties to the Cambre family for use of the bridge established ownership of the bridge. The Parish in correspondence has now claimed ownership of the bridge, for which Dutch Bayou has not been compensated. Appellants contend that the “taking” of the bridge was claimed in their supplemental and amending petition, yet the judgment was silent as to ownership of the bridge and compensation to appellants for the “taking” of the bridge.
The appellate standard of review of a ruling on a motion for a new trial is whether the trial judge abused his discretion. Woodlands Development, L.L.C. v. Regions Bank, 11-263 (La.App. 5 Cir. 12/28/11), 83 So.3d 147, 153, writ denied, 12-0424 (La.4/9/12), 85 So.3d 704. When a judgment is silent as to a claim or demand that was litigated, it is presumed to be *84 deemed denied by the trial court. Oreman, 971 So.2d at 1158.
There is no evidence to establish a transfer of ownership of the bridge from Atlantic Refining Co. to the Cambre family and then subsequently to Dutch Bayou. The judgment issued by the trial court is silent on the issue of bridge ownership, and therefore we presume that the claim is denied. The trial court did not abuse its discretion in denying the motion for new trial to clarify ownership of the bridge and the claimed “taking” of the bridge.
In their motion for new trial the appellants also requested that the trial court declare that, pursuant to the Full Release, appellants had certain rights of ingress 117and egress to the canal at the end of Cambre Road to access the rear of Lot 5. The trial court correctly established the routes to Lot 5. The trial court did not abuse its discretion in denying the motion for new trial to clarify right to rear access to Lot 5 via Cambre Road and the canal. This assignment of error is also without merit.

CONCLUSION:

We do not conclude that the trial judge was manifestly erroneous or clearly wrong in her findings of fact, nor do we find errors of law. For all of the reasons stated, the judgment of trial court is hereby affirmed. All costs are assessed against appellants.
AFFIRMED

. Dutch Bayou is a corporation owned by the Cambre family. Mr. Cambre bought Lots 2, 3 and Cambre Road from Dutch Bayou on July 9, 1998.

. The lots originally sold for commercial use to Godchaux Sugars, Inc. in 1942 are now owned by Nature Land Co., L.L.C.

. The Parish bought lots for public use, such as the lease and construction of the Louisiana National Guard building.

. This road is referred to by various other names throughout prior litigation and this litigation. It is known as Cambre Road, Access Road 2 and Dutch Bayou Road. We refer to this road as Cambre Road.

. Judgment was rendered by the trial court pursuant to a consent agreement entered into by the parties in Suit No. 1 on April 1, 1998. The judgment was amended November 13, 1998, but does not affect the pertinent language stated above.

. Dutch Bayou was represented by Mr. Cam-bre in the Full Release in Suit No. 2.

. It is apparent from the record that use of the word "intervene” by the court and the parties is not limited to a legal intervention pursuant to CCP 1091, but includes the common meaning synonymous with "interfere.”

. Airport Road Gates la and lb were also referred to as Airport Road Gates 1A and 2A during the trial. We refer to these gates as Gates la and lb.

. This access route was referred to as the "Partially Completed 2/1/07” Road during the trial.

. Mr. Cambre submitted an old lease to show that a timber company had previously used the “old logging road” to haul timber. He failed to provide conclusive evidence that the "old logging road” existed and that he used it to access Lot 5. The Parish denied the existence of the road which was supported by other witness testimony.

. The appellants also claim that the failure to mitigate is an affirmative defense that must be specifically plead and the Parish did not plead this affirmative defense, rather the trial court applied it sua sponte. We find that the evidence offered by the Parish was not in the form of an affirmative defense. We find that the evidence was offered to refute appellants claim that they were denied access to Lot 5 and to remove the camps. See, Johnsa v. Edwards, 582 So.2d 1280 (La.6/21/91); Guirard v. Pelican Pub. Co., 04-1085 (La.App. 5 Cir. 1/25/05), 895 So.2d 61.