JUDE G. GRAVOIS, Judge.
^Plaintiffs, Woodlands Development, L.L.C., Anthony Reginelli, Jr., Shauna Landry Reginelli, Peter R. Steur, and Lee R. Steur (collectively “plaintiffs”), appeal a summary judgment rendered in favor of defendant, Regions Bank, N.A. (“Regions”), dismissing plaintiffs’ petition for a declaratory judgment against Regions. Plaintiffs sought a declaratory judgment that allegedly fraudulent conduct of Regions inducing them to enter into a forbearance agreement (the “Second Amendment to Forbearance Agreement”) should thus relieve them of liability on their personal guarantees to Regions on the underlying loan. The trial court granted Regions’ motion for summary judgment, finding that there was no evidence of any written credit agreement between Regions and plaintiffs that purported to relieve plaintiffs of their continuing guarantees on the loan other than repayment in full, and dismissed plaintiffs’ claims against Regions. This appeal followed. For the reasons that follow, we affirm.

hFACTS AND PROCEDURAL HISTORY

In December of 1999, Woodlands purchased an apartment complex (the “property”) on Sandra Drive in New Orleans consisting of over 300 rental units. On June 28, 2001, Woodlands entered into a Loan Agreement with AmSouth Bank, the predecessor to Regions. The loan was secured by a mortgage on the property, plus plaintiffs’ individual guarantees of Woodlands’ obligations to Regions. The loan matured on June 27, 2005, but was extended to October 27, 2005, and was then extended again to January 26, 2006. On that day, the parties entered into a Forbearance Agreement that extended the term of the loan until December 1, 2006 in order for plaintiffs to find a new owner for the property.
In September of 2006, Regions approved a purchase agreement between Woodlands and Johnson Property Group (“JPG”) and its principal, Soundra Temple. JPG purchased the property from Woodlands, as *149 sumed Woodlands’ note with Regions, and also paid a purchase price of $500,000 to Woodlands. According to the record, JPG paid $100,000 of the purchase price directly to Regions in order to bring the interest payments current. JPG executed a promissory note in favor of Woodlands for the remaining $400,000 owed on the purchase price, which was secured by a second mortgage on the property in favor of Woodlands. Temple and JPG personally signed guarantees of JPG’s obligations to Regions. A First Amendment to the Forbearance Agreement was executed whereby the loan was extended an additional year in order to give JPG and Temple time to obtain permanent financing. Regions, JPG, Temple, and plaintiffs all executed the First Amendment in November of 2006, which extended the term of the loan until November 15, 2007 and under which plaintiffs remained as guarantors of Woodlands’ original loan with Regions.
|4A Second Amendment to the Forbearance Agreement was signed by all of the parties to the First Amendment in December of 2007, further extending the loan until December of 2008. Thereafter, on January 9, 2008, JPG sold the property to Crescent City Gates Fund, L.P. (“CCGF”), which assumed the indebtedness to Regions. Plaintiffs alleged in their petition that they did not learn of this sale to CCGF until several months later, at a deposition of Donald Clark, JPG’s agent, in an unrelated matter. Plaintiffs also alleged that Regions knew of the contemplated sale to CCGF at the time the Second Amendment was executed, but did not inform them, which, they argued, breached the forbearance agreements. Neither Woodlands nor Regions entered into any written agreement with JPG or CCGF in connection with the sale to CCGF, unlike the previous sale from Woodlands to JPG.[1]
The sale from JPG to CCGF formed a basis for plaintiffs’ suit for a declaratory judgment against Regions seeking to void their guarantees to Regions on the underlying note and obligations in connection with the Loan Agreement and subsequent Forbearance Agreement and the amendments thereto.[2] Plaintiffs alleged that Regions induced them to enter into the Second Amendment to the Forbearance Agreement by misrepresenting to them the true state of JPG/Temple’s financial health, by failing to conduct quarterly reviews of the project as per the forbearance agreements, and by failing to inform them of JPG’s failure to meet the benchmarks and other obligations in the First Amendment to the Forbearance Agreement, which actions of Regions plaintiffs alleged constituted fraud.
| sPlaintiffs argued that these misrepresentations by Regions damaged them in multiple ways, including releasing the collateral for the loan that Temple/JPG was contractually required to pay off by the end of the forbearance agreements without paying off the loan. They also argued that the sale to CCGF damaged them because the new buyer, CCGF, had no contractual obligation to renovate or even rent the complex, unlike the obligations of Temple and JPG under the First and Second Amendments to the Forbearance Agreement. Had Regions and JPG provided *150 this information to plaintiffs prior to the signing of the Second Amendment to the Forbearance Agreement and the subsequent sale, plaintiffs argue they could have exercised several options regarding the property, including taking over the project again themselves, rather than allowing the sale to CCGF to be consummated, which they alleged was an underfunded “shell” company. Plaintiffs argued that Regions’ fraudulent conduct and misrepresentations to them to induce them to sign the Second Amendment to the Forbearance Agreement should thus relieve them of their written guarantees to the original loan.
Regions countered that there is no written credit agreement between Regions and plaintiffs, as is required by LSA-R.S. 6:1122, that purports to release plaintiffs from their obligations under their guarantees and the First and Second Amendments to the Forbearance Agreement, which ratified their guaranty agreements, prior to the full repayment of the loan. Thus, Regions argues, plaintiffs’ suit for a declaratory judgment must fail under LSA-R.S. 6:1121, et seq. Regions pointed out that when the loan was not paid by its original due date in 2005, it had the right to immediately exercise all of its remedies, including acceleration and foreclosure, though it did not.[3] Regions argued that under the | ^Forbearance Agreement and its two amendments, the only obligation Regions had was to forbear collecting the loan. It argued that Temple and JPG had the same obligations under the First and Second Amendments to the Forbearance Agreement that plaintiffs had, and which remain in effect despite the sale of the property to CCGF. It also pointed out that as second mortgagee (to Regions), Woodlands always had the duty/ability to determine whether JPG was meeting its obligations under the First Amendment to the Forbearance Agreement and could have exercised its own right to foreclose on the property at any time. Regions also argued that neither the original loan agreement nor the subsequent forbearance agreements were ever conditioned a subsequent sale of the property from one obli-gor to another upon Regions’ approval thereof, even though Regions was involved in the previous sale of the property from Woodlands to JPG.
Plaintiffs also alleged in their opposition to the motion for summary judgment that they were prevented from conducting meaningful discovery because Regions had prevented the depositions of various bank officers who had allegedly mislead plaintiffs regarding the financial health of JPG and also “duped” them into signing the Second Amendment to the Forbearance Agreement only days before consummation of the sale of the property from JPG to CCGF.
The trial court heard the matter, after which it granted judgment for Regions, finding that the written credit agreements (the loan agreement, the guaranty agreements, and subsequent forbearance agreements) controlled, none of which purported to release plaintiffs from their continuing guarantees of Woodlands’ obligations on its loan from Regions, and therefore ruled in favor of Regions, dismissing plaintiffs’ claims against Regions.
| ^Plaintiffs moved for a new trial, arguing that Regions’ prevention of their discovery efforts warranted such. Plaintiffs *151 also argued at the hearing for a new trial that the trial court should consider their recent procurement of the sworn affidavit of Donald Clark, JPG’s representative, which asserted that he informed Regions, prior to the confection of the Second Amendment to the Forbearance Agreement and prior to the sale of the property from JPG to CCGF, that JPG in fact was in negotiations with CCGF for the sale. The trial court denied the motion for a new trial, finding that the affidavit did not qualify as new evidence under LSA-C.C.P. art. 1974 because the parties were always aware that Donald Clark was JPG’s representative.[4] This appeal followed.

LAW AND ANALYSIS

In determining whether summary judgment is appropriate, the appellate court reviews evidence de novo. Under such standard, the appellate court looks at pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, in making an independent determination that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law.[5] In conducting this de novo review, we are guided by the burdens of proof imposed upon a movant in a motion for summary judgment, which are set forth in LSA-C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or | ^defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
On appeal, plaintiffs argue first that summary judgment should not have been granted because plaintiffs did not have an opportunity to conduct discovery. Second, they argue that their motion for a new trial should have been granted because the affidavit from Donald Clark constituted new evidence supporting the motion. Last, plaintiffs assert that they presented evidence of Regions’ breach of the loan contract sufficient to defeat summary judgment.

FIRST AND THIRD ASSIGNMENTS OF ERROR

Plaintiffs argue that they were prevented from taking discovery regarding Regions’ fraudulent acts that constituted a breach of the credit agreements, and further that summary judgment should be reversed because plaintiffs did present sufficient evidence of Regions’ fraud. Because these assignments of error are intertwined, we will discuss them together.
According to their brief, plaintiffs sought discovery of parol evidence to show that Regions committed fraud concerning the Second Amendment to the Forbearance Agreement, i.e., that Regions “duped” them into signing it only days prior to consummation of the sale of the property from JPG to CCGF. They argue that Regions’ failure to be forthcoming with the truth about JPG’s lack of compliance with *152 the terms of the First Amendment to the Forbearance Agreement and the fact that Regions knew JPG and CCGF were negotiating a sale of the property harmed plaintiffs by “stripping away multiple rec-ourses that Plaintiffs would have possessed, had Temple and JPG still owned the property.” Plaintiffs argue that despite all the concessions they made in the forbearance agreements, |flthey never agreed to give up any cause of action based on fraud on the part of Regions, as is provided in Section 6(iii) of the forbearance agreements.
Regarding plaintiffs’ claims that they have been denied discovery, Regions argues that discovery requests must be viewed in relation to the substance of the claims asserted, not in a vacuum. Thus, it argues, the trial court was correct in denying the requested discovery since plaintiffs’ claims either did not exist as a matter of law, or could be determined from the four corners of the documents. Regions counters that it has produced much discovery (over 4,000 pages of documents), but that its internal loan documents, which plaintiffs sought in motions to compel, are protected from discovery by LSA-R.S. 6:333(I)(2).[6] The trial court denied the motion to compel. This Court denied writs in connection with this ruling, as did the Supreme Court.[7]
LSA-R.S. 6:1122 expressly prohibits an action by a debtor against a creditor based on an oral credit agreement, providing that “[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.” The Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery. Jesco Construction Corp. v. Nationsbank Corp., 02-0057 (La.10/25/02), 830 So.2d 989. The parties do not dispute that the loan agreement and subsequent forbearance agreements are written credit agreements. The trial court found that plaintiffs did not produce any written credit agreement that purported to Imvoid plaintiffs’ guarantees, either at all or under the factual scenario alleged in this case, and thus denied the claims on that basis.
Because plaintiffs have produced no written credit agreement signed by both plaintiffs and Regions purporting to release them from their continuing guarantees on the loan, their suit for a declaratory judgment was properly dismissed under LSA-R.S. 6:1122. The discovery plaintiffs sought to support their demand, depositions of bank officers, would not defeat LSA-R.S. 6:1122’s requirement of a written credit agreement. Thus, we find no error in the trial court’s grant of summary judgment in favor of Regions on plaintiffs’ suit for a declaratory judgment.
However, as discussed below, the substance of plaintiffs’ fraud allegations that served as a basis for the declaratory judg *153 ment suit have also been asserted as affirmative defenses to Regions’ reconventional demand, which remains viable in the court below.

SECOND ASSIGNMENT OF ERROR

In their second assignment of error, plaintiffs argue that their motion for a new trial should have been granted because the affidavit from Donald Clark constituted new evidence supporting the motion.
LSA-C.C.P. art. 1971 provides that “a new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.” A new trial shall be granted “when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.” LSA-C.C.P. art. 1972(2).
InA trial judge has broad discretion in the granting or denying of a motion for a new trial. The appellate standard of review of the ruling on a motion for a new trial is whether the trial judge abused his discretion. LeBlanc v. Western Heritage Ins. Co., 887 So.2d 81 (La.App. 5 Cir. 12/30/02).
Plaintiffs filed their motion for a new trial on August 10, 2010. Therein, they argued that a new trial should be granted because their motion for a continuance should have been granted to allow them to conduct discovery into the knowledge that Mark Reiber, Regions’ bank officer, had of the impending sale of the property from JPG to CCGF. The existence of the Donald Clai’k affidavit, the “new evidence,” is not mentioned until the hearing on the motion for a new trial on August 31, 2010, as the affidavit was executed on August 30, 2010.
The trial court denied the motion for a new trial. The transcript of the hearing shows that the trial court felt that even if the assertions in the affidavit were accepted as true, they did not show that Regions breached any terms of the written credit agreements.
We find no abuse of discretion in the trial court’s ruling denying the motion for a new trial. Even if the requested discovery depositions had been allowed and even if the Donald Clark affidavit had been considered by the trial court, neither constitutes a written credit agreement as per LSA-R.S. 6:1122 upon which plaintiffs could have based the suit for a declaratory judgment.

DISCUSSION OF RULING IN WRIT APPLICATION NO. ll-C-938

At oral argument in this case, plaintiffs contended that a ruling by this Court in this case on October 19, 2011, denying writ No. ll-C-938, required that this Court, in this appeal, reverse the judgment on appeal in order for the two rulings to be legally consistent. In writ application No. ll-C-938, which concerned a ruling 112in the same district court case as the judgment on appeal, Regions sought this Court’s supervisory review of the trial court’s denial of Regions’ motion for summary judgment on its reconventional demand, which seeks to enforce payment on the loan and enforcement of plaintiffs’ guarantees. The trial court denied Regions’ motion for summary judgment, finding that genuine issues of material fact remained, and that Regions was not entitled to judgment as a matter of law on its reconventional demand, based upon plaintiffs’ assertion of affirmative defenses to the reconventional demand, which defenses alleged the same fraudulent conduct on the part of Regions that formed the basis of plaintiffs’ suit for a declaratory judgment. This Court denied the writ, finding no basis upon which to disturb the trial court’s ruling.
*154 We find no legal inconsistency in affirming the judgment on appeal and this court’s writ denial in writ application No. ll-C-938. As was noted above, LSA-R.S. 6:1122 is limited to a debtor’s claims on a credit agreement and does not apply to a debtor’s defenses to a creditor’s claim on such credit agreements.[8] In other words, R.S. 6:1122 bars plaintiffs’ suit for a declaratory judgment because plaintiffs produced no written credit agreement that purported to void the continuing guarantees and release plaintiffs from liability thereon, but the statute does not apply to preclude plaintiffs’ assertion of the same alleged fraudulent conduct by Regions as affirmative defenses to the reconventional demand of Regions. See Whitney Nat’l Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325; Bernard v. Iberia Bank, 01-2234 (La.App. 4 Cir. 10/30/02), 832 So.2d 355.[9]
| ^CONCLUSION
Accordingly, for the reasons assigned, we affirm the trial court’s judgments that granted summary judgment in favor of Regions dismissing plaintiffs’ suit for a declaratory judgment and that denied plaintiffs’ motion for a new trial.

AFFIRMED

. Regions asserted in the trial court and in brief that there is no document evidencing their approval of or participation in the sale to CCGF; had it done so, Regions asserts in brief that it would have required the principals of CCGF to execute the same written guarantees that it had required of JPG and Temple in connection with the sale from Woodlands to JPG.

. Plaintiffs have also sued JPG and Temple. This appeal concerns only the ruling on Regions' motion for summary judgment.

. Regions has filed a reconventional demand against plaintiffs seeking enforcement of the guarantees and payment on the loan. This reconventional demand remains viable after the dismissal of plaintiffs’ suit for a declaratory judgment. Plaintiffs asserted affirmative defenses to the reconventional demand, which are based upon the same facts as the ones that formed a basis for their declaratory judgment suit.

. Plaintiffs alleged that they had difficulty obtaining Clark’s affidavit because he resided out of state, beyond the subpoena power of the court.

. Marigny v. Allstate Ins. Co., 95-0952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229, writ denied, 96-0693 (La.4/26/96), 672 So.2d 910.

. LSA-R.S. 6:333(I)(2) provides as follows:
"Notwithstanding any law to the contrary, all financial records prepared by or for the bank in connection with the bank's evaluation, analysis, or review of any loan or other extension of credit or of any collateral security therefor or reserve therefor shall be confidential and shall not be discoverable or admissible in evidence in any civil proceeding pertaining to or arising out of any such loan, other extension or credit, or the collateral security therefor.”

. Woodlands Development, L.L.C., Anthony Reginelli, Jr., Shauna Landry Reginelli, Peter R. Steur and Lee R. Steur v. Regions Bank, Soundra J. Temple and Johnson Property Group, L.L.C., No. 10-C-225 (La.App. 5 Cir. 5/20/10) (unpublished writ disposition), writ denied, 2010-1405 (La.6/30/10), 39 So.3d 584.

. As this Court noted in its disposition of writ no. ll-C-938:
"... The August 3, 2010 judgment on appeal dismissed “with prejudice all claims by plaintiffs against Regions Bank, reserving to the Bank its right to proceed on its recon-ventional demand." (Emphasis added.) The judgment was silent on Woodlands' defenses. And as the subsequent judgment rendered on August 29, 2011 clarified "the prior judgment did not dismiss any affirmative defenses the plaintiffs may have to Regions Bank's reconventional demand....”

. It is noted that in Bernard, the majority granted summary judgment in favor of Regions on its reconventional demand. The dissent would have denied summary judgment, finding that genuine issues of material fact remained regarding the interpretation of two documents (writings) relied upon by the parties. Thus, the issue in that case was whether the two documents constituted written credit agreements as per LSA-R.S. 6:1121, unlike in the instant case. However, in that case, there were no allegations of fraudulent conduct by Regions, as in the instant case.