ROBERT A. CHAISSON, Judge.
| .¿Regions Bank (“Regions”) appeals a judgment dismissing with prejudice, as a sanction for discovery violations, its claims against debtors on a promissory note and guarantees. Regions also appeals an earlier judgment denying its motion for summary judgment on the same promissory note and guarantees. For the following reasons, we vacate the judgment dismissing with prejudice Regions’ suit on the note and guarantees, grant Regions’ motion for summary judgment on the note and guarantees, and remand the matter for further proceedings on the debtors’ claims for damages due to alleged fraud on the part of Regions and its employees.
FACTS AND PROCEDURAL HISTORY
The facts of the dealings between the parties are set forth in a prior appeal in this matter and therefore need only be summarized here.[1] In 1999, Woodlands ^Development, L.L.C. (“Woodlands”)[2] *359 purchased an apartment complex (the “property”) on Sandra Drive in New Orleans consisting of over 300 rental units. On June 12, 2001, Woodlands borrowed approximately $5,000,000 from AmSouth Bank, the predecessor of Regions, which loan was secured by a mortgage on the property. The loan documents provided the bank a security interest in any insurance proceeds involving damage to the property, giving the bank the right to apply any such proceeds to the indebtedness. When the loan matured in July 2005, Woodlands defaulted, but the parties entered into a forbearance agreement giving the debtors until January 2006, to repay the obligation. In January 2006, AmSouth again agreed to extend the maturity date of the note to December 2006.
In September 2006, Regions approved a sale of the property to Johnson Property Group (“JPG”), which required JPG to assume the unpaid principal balance of Woodlands’ debt to Regions, and pay Woodlands $500,000 cash.[3] The cash portion of the sale required a $100,000 payment directly to Regions to bring the interest payments current, and a note in favor of Woodlands for the $400,000 balance, secured by a second mortgage on the property. The Woodlands group remained obligated for the original loan, and JPG and its principal, Soundra Temple, also became guarantors on the note. JPG and Ms. Temple were to take over the project, complete renovations, and rent out the units. In furtherance of this transaction, the parties executed the First Amendment to Forbearance Agreement in November 2006, extending the maturity date on the note until November 2007. In December 2007, the parties executed the Second Amendment to Forbearance Agreement, extending the maturity date on the note until November 2008.
l/The transaction giving rise to this litigation occurred on January 10, 2008. On that date, JPG sold the property to Crescent City Gates Fund (“CCGF”). Almost one year later, on January 8, 2009, Woodlands filed the present suit seeking a judgment declaring its obligations under the note void because of Regions’ fraudulent complicity in the sale to CCGF. Woodlands asserted that because of the sale, its mortgage on the property by JPG was rendered unenforceable, as JPG no longer owned the property. It further asserted that Regions had not complied with certain obligations which it had under the forbearance agreements to monitor the renovations to the property by JPG, and that these derelictions further affected its security interest in the property and rendered the note unenforceable.
Regions denied these allegations, particularly asserting that it learned of the sale to CCGF months after it had taken place. It reconvened against Woodlands seeking repayment of the original $5,000,000 loan. It also sought the proceeds paid to Woodlands under an insurance policy covering damages to the property occasioned by Hurricane Katrina. These insurance proceeds are on deposit with the clerk of court, and total over $5,000,000. Woodlands answered the reconventional demand and asserted as an affirmative defense the same fraud allegations as those in its original suit.
Regions eventually filed a motion for summary judgment on Woodlands’ suit for declaratory relief, as well as on its own reconventional demand. The trial court granted Regions’ motion as to Woodlands’ petition for declaratory judgment pursuant to the Louisiana Credit Agreement Act, La. R.S. 6:1122, reasoning that there was no writing absolving Woodlands from its *360 obligations under the note. However, the trial court reserved to Woodlands the right to raise the same issues as a defense to Regions’ reconventional demand. Woodlands appealed to this court.
| ¡While the matter was pending before this Court, Woodlands sought further discovery, which the trial court allowed to go forward. Regions applied to this court for a supervisory writ, arguing that it was entitled to summary judgment on its re-conventional demand, as well as the previous summary judgment in its favor on the original declaratory judgment suit. This court denied the writ. At that point, Regions asserted in the appeal in this Court that the judgment dismissing the debtors’ declaratory action pursuant to La. R.S. 6:1122, should likewise result in the granting of its summary judgment motion in its reconventional demand.
This Court affirmed the summary judgment dismissing Woodlands’ action for declaratory relief, and also affirmed the district court judgment allowing the re-conventional demand to continue based on Woodlands’ affirmative defense of fraud. During further discovery, it was revealed that Regions was unable to produce emails sought by Woodlands because many of them, if indeed they had existed, would have been deleted under Regions’ electronic records retention policy. The trial court deemed the retention policy to be in bad faith, and dismissed with prejudice Regions’ reconventional demand pursuant to La. C.C.P. art. 1471.
Regions now appeals that judgment, and also appeals the earlier judgment denying its motion for summary judgment on its reconventional demand.
LAW AND ANALYSIS

Dismissal of Regions’ suit on promissory note as sanction for discovery violations

During discovery, Woodlands sought production of all e-mails in the possession of Regions relating in any way to the dealings between the parties. During this process, it was revealed that Regions had in effect a standard electronic information retention policy in which documents in electronic form were to be maintained for as long as a paper document would be maintained in the normal | f,course of the bank’s business. In the case of emails, the policy was that if the individual employee determined that the information contained therein need not be maintained for a longer time under the general retention policy, then the e-mail would be deleted after 90 days. It was also the policy that when suits were filed, all e-mails relating to the suit should be retained.
Suit was filed on January 8, 2009. Woodlands asserted that the pertinent time period involved was between late 2006, shortly after the First Amendment to Forbearance Agreement was signed, and January 2008, when the property was sold to CCGF. It alleged that during that time, Regions engaged in fraudulent behavior which caused Woodlands damage. It therefore sought production of all relevant e-mails for that period. Regions produced several thousand documents in response, many of which had been retained under the retention policy. However, any e-mails which were not deemed retainable for business purposes had long been deleted under the 90-day schedule by the time suit was filed. In response to a motion to compel the release of additional e-mails, Regions represented to the trial court that a search was continuing in its information technology department; the trial court therefore issued an order for further production. Elicia Reames, who was in charge of Regions’ document retention system, stated in her deposition that she had been asked by Regions’ counsel to look for e-mails related to three bank em *361 ployees who were named in the discovery requests, and that she delegated this task to her assistant, Felecia McCord. Ms. Reames also said that she received an order to hold e-mails relating to the Woodlands’ account in September of 2009, some eight months after suit was filed. She further testified that she did not search for e-mails involving non-bank employees who were mentioned in the discovery requests from Woodlands.
|7When this information was presented to the district court, the trial judge concluded that Regions was in bad faith in regard to discovery. He particularly noted that the 90-day retention policy for emails was not a “good faith” policy as contemplated in La. C.C.P. art. 1471(B). He therefore dismissed Regions’ suit in its entirety and with prejudice.
La. C.C.P. art. 1471(B) provides that “[ajbsent exceptional circumstances, a court may not impose sanctions under this Article on a person or party for failing to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system.” The article also provides that one of the sanctions for failure to abide by a discovery order is dismissal of the action. However, that draconian sanction is available to trial judges only in the most egregious of cases involving willful violation of discovery orders, and such sanctions are reviewed under the abuse of discretion standard. Mascaro v. Parish of Jefferson, 10-488 (La.App. 5 Cir. 11/28/10), 54 So.3d 715.
In the present case, Regions had in effect a comprehensive information retention policy applicable to all of its business proceedings. For e-mail, the policy was that if the e-mail was of a nature that, if it were a writing, it would be considered a document to be retained, then that e-mail was to be retained. A “document” was defined as any material that was generated, sent, or received by the bank, regardless of its medium or form, which should be retained “in order to meet customer, legal, regulatory and business requirements.” If, on the other hand, the e-mail was not of any administrative or business value, it could be deleted. This decision was left to the discretion of the individual user. Any emails not noted for retention were automatically deleted by the system after 90 days.
As the chronology of events shows, the events alleged to be fraudulent occurred sometime during 2007 when the second amendment to the forbearance | Ragreement was being discussed by the parties, and before January 10, 2008, the date the property was sold by JPG to CCGF. Suit was filed on January 8, 2009. Thus, any e-mails not deemed to be “documents” would have been deleted by the system by April of 2008, eight months before Regions was sued by Woodlands. It was thus impossible for Regions to retrieve these e-mails once suit was filed. Further, there was no evidence to show that Regions’ retention policy was anything but routine, or that it was operated in any bad faith manner in regard to this dispute. The trial court also faulted Regions for representing to the court that it had conducted additional searches, when Ms. Reames said in deposition that she had only been asked to do one search. It is unclear from the deposition excerpts in the record exactly what searches were conducted because Ms. Reames also said that she had given Felecia McCord the job of looking for the requested e-mails, but Ms. McCord was not deposed. The trial court also noted that Regions had resisted discovery in a “systematic and intentional” way. However, as noted in Woodlands Development, L.L.C., much of this resistance was due to Regions’ proper reliance *362 on La. R.S. 6:633(I)(2), which protects certain financial records from discovery, in disputing whether Woodlands was entitled to much of the information which it sought. Finally, the trial court pointed out that Regions did not put a hold order on the emails until September 2009, eight months after suit was filed, and thus information useful to Woodlands’ case was lost. While there was a delay in the hold order to the information technology department, it is nonetheless also true that by the time suit was filed, the e-mails from the pertinent period had already been deleted.
We have reviewed the record relating to this discovery dispute, and conclude that the trial court abused his discretion in dismissing the case. While some e-mails may have been lost, the conclusion that these communications were essential |9to Woodlands’ case is not well founded. Under the retention policy, employees were required to keep all e-mails that were related to the bank’s clients, business, legal, and regulatory purposes. Only those emails with no administrative or business purposes were to be deleted. To subscribe to Woodlands’ argument that Regions was acting in bad faith in deleting the e-mails would mean that its retention policy was routinely ignored by its employees with Regions’ knowledge. There is no evidence of record to support such a finding. We therefore conclude that the trial court abused his discretion in dismissing the suit, especially in light of La. C.C.P. art. 1471(B). The judgment dismissing Regions’ reconventional demand is therefore vacated.

Regions’ Motion for Summary Judgment on promissory note and guarantees

The second issue is whether Regions’ earlier motion for summary judgment in its reconventional demand on the promissory note and guarantees was properly denied.
In determining whether summary judgment is appropriate, the appellate court reviews evidence de novo. Under such standard, the appellate court looks at pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, in making an independent determination that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. Woodlands, supra at 151. The burden of proof in a motion for summary judgment remains with the movant. La. C.C.P. art. 966(C)(2).
In this case, it was incumbent upon Regions, as the party that will bear the burden of proof on its suit on the promissory note and guarantees, to put forth a prima facie case of its entitlement to recover on them. In order to do so, Regions simply needed to produce the promissory note and guarantees sued upon. See Humphrey v. Humbrecht, 427 So.2d 461, 463 (La.App. 5 Cir.1983), cert. denied, 433 So.2d 1052 (La.1983). Since Woodlands did not dispute the authenticity of the promissory note or guarantees, or their original indebtedness thereunder, Regions met its burden of putting forth a prima facie case. Thereafter, the burden of proof shifted to Woodlands to prove the existence of a triable issue of fact. Premier Bank, National Association v. Percomex, Inc., 615 So.2d 41, 43 (La.App. 3 Cir.1993). Woodlands asserted that there are genuine issues of material fact regarding its fraud allegations against Regions that precluded the grant of summary judgment. For the following reasons, we disagree.
In its answer to Regions’ reconventional demand on the promissory note and guarantees, Woodlands designated its fraud allegations against Regions as “affirmative defenses” to Regions’ right to collect on the note and guarantees, and prayed that *363 Regions’ reconventional demand be dismissed. We disagree with Woodlands’ assertion that its allegations of fraud are “affirmative defenses,” which, if proven, would entitle it to extinguishment of its debt to Regions.
La. C.C.P. art. 1005 includes “fraud” as one of the affirmative defenses which must be specially pleaded. Article 1005 further contains an omnibus recital clause, which provides that “... any other matter constituting an affirmative defense” must be specially pleaded. In explaining Article 1005’s omnibus recital clause, the Louisiana Supreme Court has stated, “[A]n affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiffs demand on its merits.” Webster v. Rushing, 316 So.2d 111, 114 (La.1975).
In this case, Woodlands alleges that after the signing of the First Amendment to the Forbearance Agreement in November 2006, Regions engaged in fraudulent activity to the detriment of Woodlands. However, Woodlands’ note and guarantees were entered into over five years earlier in June 2001. Therefore, | nWoodlands’ allegations of fraud are not in regard to the negotiation for, or consummation of, its credit agreement with Regions, and therefore are clearly outside the parameters of the credit agreement. Furthermore, the only act undertaken by Woodlands, subsequent to the alleged fraud, was the signing of the Second Amendment to the Forbearance Agreement in December 2007. Yet Woodlands admits that, other than extending the maturity date of the loan for an additional year, the terms and conditions of the Second Amendment were identical to the First Amendment. Under these circumstances, Woodlands’ fraud allegations, even if proven, do not implicate its credit agreement with Regions such that those allegations would serve as an affirmative defense, and have the effect of defeating Regions’ right to collect on the note and guarantees. Additionally, Woodlands has not cited any authority for its position that its fraud allegations, if proven, would extinguish its debt to Regions as a matter of law. Woodlands’ specific allegations of fraud, rather than being affirmative defenses to Regions’ right to collect on the note and guarantees, amount to a separate cause of action against the bank sounding in tort. As such, any evidence of such fraud presented by Woodlands on the motion for summary judgment, is insufficient to raise a genuine issue of material fact that would preclude the grant of summary judgment on the note and guarantees.
In addition to enforcement of the promissory note and guarantees, Regions’ motion for summary judgment also sought enforcement of the bank’s security interest in the insurance proceeds. In response, Woodlands argues that in § 1.4(E) of its September 27, 2006 purchase agreement with JPG, it specifically reserved its rights to any insurance proceeds derived from any claim or suit that it had against any insurer of the property for events occurring prior to the closing date. We note that under Woodlands’ credit agreement with Regions, the bank was assigned a | i2security interest in any such insurance proceeds. Therefore, the only right that Woodlands had to reserve, absent a contrary agreement by Regions, was its rights to insurance proceeds subject to the assigned security interest of the bank to those proceeds. Regions was not a party to Woodlands’ and JPG’s purchase agreement, and that document only establishes the rights of Woodlands and JPG vis-a-vis one another. Even if, as alleged by Woodlands, Regions approved the purchase agreement with JPG, no evidence has been *364 presented to show that the bank waived, renounced or altered its security interest in any insurance proceeds. As such, there is no genuine issue of material fact that Regions is entitled to enforce its security interest in the insurance proceeds and apply such portion of those proceeds as are necessary to satisfy Woodlands’ loan. On the record before us, we are unable to determine the current amount of Woodlands’ debt to Regions or the current amount of insurance proceeds in the registry of the court. Therefore, we remand this matter to the district court for determination of the current amount of Woodlands’ debt, and for determination of the portion of the insurance proceeds which are necessary to satisfy that debt.

Status of Woodlands’ claims against Regions for fraud

In this appeal, Regions has argued a number of reasons why the trial court erred in denying its motion for summary judgment on the promissory note and guarantees. One of the reasons advanced by Regions is that the prior dismissal of Woodlands’ declaratory judgment action is res judicata, thereby precluding “relitigation” of Woodlands’ fraud allegations. Having disposed of Regions’ motion for summary judgment on other grounds, it is not necessary for us to address this argument for resolution of Regions’ summary judgment. However, in light of our opinion rendered herein, and the prior opinion rendered in this matter by another panel of this Court, we are compelled to address Regions’ argument as |13to the preclusive res judicata effect of the prior judgment, insofar as it implicates the current status of Woodlands’ claims against Regions for fraud.
In the prior Woodlands opinion, this Court held that “[bjecause plaintiffs have produced no written credit agreement signed by both plaintiffs and Regions purporting to release them from their continuing guarantees on the loan, their suit for a declaratory judgment was properly dismissed under LSA-R.S. 6:1122.” Woodlands, at 152. In so ruling, however, this Court specifically recognized that “the substance of plaintiffs’ fraud allegations that served as a basis for the declaratory judgment suit have also been asserted as affirmative defenses to Regions’ reconven-tional demand, which remains viable in the court below.” Id. at 152-153.
As explained in the prior opinion, “LSA-R.S. 6:1122 expressly prohibits an action by a debtor against a creditor based on an oral credit agreement, providing that ‘[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debt- or.’ ” Id. at 152.
In St. Landry Homestead Federal Savings Bank v. Vidrine, 12-1406 (La.App. 3 Cir. 6/12/13), 118 So.3d 470, writs denied, 13-2218, 13-2219 (La.12/2/13), 126 So.3d 1283, the court reviewed the jurisprudence interpreting this statute, as set forth in Whitney National Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325; Jesco Construction Co. v. Nationsbank Corp. 02-0057 (La.10/25/02), 830 So.2d 989; and King v. Parish National Bank, 04-337 (La.10/19/04), 885 So.2d 540. The St. Landry court concluded that “we do not interpret the supreme court’s decisions in Whitney, Jesco, and King to establish a rule of law that the Louisiana Credit Agreement Act renders a financial institution immune from any and all liability arising from its business operations, including business operations that | Hoccur outside the parameters of a credit agreement as defined in La. R.S. 6:1121(1).” St. Landry, supra at 486. We agree with this analysis. The Louisiana Credit Agreement Act is intended to preclude a claim that a verbal agree *365 ment for credit exists, or that the terms of a -written credit agreement have been verbally altered. The Act is not intended to insulate financial institutions from any and all liability that arise outside the parameters of a credit agreement.
As previously noted in this opinion, the specific allegations of fraud made by Woodlands, which alleged conduct postdates the credit agreement by some six years, are not in regard to the negotiation for, or consummation of, its credit agreement with Regions, and therefore are clearly outside the parameters of the credit agreement. In our view, it would be inconsistent to find that Woodlands’ fraud allegations are not sufficient to raise a genuine issue of material fact for purposes of the motion for summary judgment on the credit agreement, yet find that those same fraud allegations are within the parameters of the credit agreement for purposes of the preclusive effect of LSA-R.S. 6:1122. While we disagree with the prior opinion’s adoption of Woodlands’ designation of their fraud allegations as “affirmative defenses” to Regions’ suit on the note, we find that the practical effect of the opinion (i.e., that Woodlands’ fraud allegations are still viable against Regions), is the correct result.
LSA-R.S. 13:4232(A)(1) provides: “A judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the res judicata effect of the judgment.” We find that such exceptional circumstances exist in this case because we agree with the prior opinion that Woodlands’ allegations of fraud are still viable, just not in the procedural posture of “affirmative defenses” to Regions’ suit on the note. We therefore reject Regions’ argument that res judicata precludes further litigation of Woodlands’ fraud allegations. While it is not 11fientirely clear to this Court how the sale of the property to CCGF affected Woodlands’ security interests in the property itself, or how its obligations under the credit agreements were changed by the sale, Woodlands should nonetheless be given the opportunity to establish facts in support of their allegations. We therefore remand this matter to the trial court for further proceedings on Woodlands’ fraud allegations consistent with this opinion.
CONCLUSION
For the above reasons, we vacate the judgment dismissing with prejudice Regions’ reconventional demand. We grant Regions’ motion for summary judgment on the note and guarantees, including enforcement of the security interest in the insurance proceeds. We remand this matter to the district court for determination of the current amount of Woodlands’ debt, and for determination of the portion of the insurance proceeds which are necessary to satisfy that debt. As to Woodlands’ fraud claim against Regions, we also remand that matter for further proceedings consistent with this opinion.

VACATED AND REMANDED.

. See, Woodlands Development, L.L.C. v. Regions Bank, 11-263 (La.App. 5 Cir. 12/28/11), 83 So.3d 147, writ denied, 12-424 (La.4/9/12), 85 So.3d 704.

. The principals of Woodlands signed as guarantors on the note and are also plaintiffs in this litigation. They therefore are included in our references to "Woodlands.”

. Regions asserts that its understanding of the transaction was that it would be a bond-for-deed contract rather than an actual sale, but it was in fact a sale.