MARC E. JOHNSON Judge.
| gDefendant/Appellant[1] Johnson Property Group, LLC (hereinafter referred to as “JPG”), appeals the partial summary judgment granted in favor of Plaintiff/Ap-pellee, Woodlands Development, LLC (hereinafter referred to as ‘Woodlands”), regarding the sale of immovable property rendered in the 24th Judicial District Court, Division, “J”. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This case has been to this Court on three prior appeals. The facts and procedural history are adequately set forth in Woodlands Development, L.L.C. v. Regions Bank, 11-263 (La.App. 5 Cir. 12/28/11); 83 So.3d 147, writ denied, 12- *818 424 (La.4/9/12); 85 So.3d 704; Woodlands Development, L.L.C. v. Regions Bank, 12-754 (La.App. 5 Cir. 5/28/14); 141 So.3d 357, writ denied, 14-1732 (La 11/7/14); 152 So.3d 179; and Woodlands Development, L.L.C. v. Regions Bank, 13-226 (La. App. 5 Cir. 10/29/14); 164 So.3d 226. The pertinent facts for .this appeal are summarized as follows.
After the matter was remanded to the trial court pursuant to this Court’s most recent opinion[2], Woodlands filed a “Motion to Re-urge Motion for Partial Summary Judgment” on February 4, 2015, alleging it was entitled to partial summary judgment finding that JPG and Soundra J, Temple owed Woodlands $5,220,300.14, along with interests as reimbursement for the proceeds'paid to Regions Bank for the mortgage on the immovable property involved in this matter. Woodlands alleged JPG and Ms. Temple were solidarily liable to reimburse it for payments made on the mortgage in accordance with the Agreement of Purchase and Sale (hereinafter referred to as “the' Purchase Agreement”) and the Sale of Immovable Property with Assumption of Mortgage (hereinafter referred to as “the Act of Sale”). In response to Woodlands’ motion, JPG and Ms. Temple filed then- objection to the motion and a motion to strike the Purchase Agreement from evidence on February 20, 2015, primarily asserting the agreement was irrelevant and was not the final expression of the intent of the parties.
On February 27, 2015, the trial court heard JPG’s and Ms. Temple’s motion to strike. In a ruling rendered on March 5, 2015, the trial court denied their motion. •The trial court heard Woodlands’ motion for partial summary judgment on March 6, 2015. On March 27, 2015, the trial court granted summary judgment in favor of Woodlands and against JPG on the promissory note in the principal sum of $400,000.00 plus interest and attorney’s fees pursuant to the note. The trial court also ruled that JPG and Ms. Temple were responsible for the assumption of the remaining amount owed on the mortgage to Regions Bank, and the L$5,220,300.14 in insurance proceeds paid to Regions Bank with interest at the rate of LIBOR plus 2.5% interest until paid.[3] The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, JPG alleges the trial court erred in granting partial summary judgment in favor of Woodlands by considering parole evidence and finding'JPG liable to Woodlands for the $5,220,300.14 in insurance proceeds.
LAW AND ANALYSIS

General Summary Judgment Law

This Court explained the standard of review for summary judgments in Pouncy v. Winn-Dixie La., Inc., 15-189, pp. 5-6 (La.App. 5 Cir. 10/28/15); 178 So.3d 603, by stating the following:
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. The summary judgment procedure is' favored and is designed to secure the just, speedy, and inexpensive determination of every action.
*819 A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter, of ■ law. A material fact is one-that, potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. An issue is genuine if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no need for trial on that issue.
⅜ ⅜ ⅜
Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Thus, appellate ciurts ask the same questions the trial e >urt does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the move is entitled to judgment as a matter of law.
(Internal citations omitted).
| ¡¡Admission of the Purchase Agreement
JPG alleges the trial court erred in admitting and considering parole evidence, specifically the Purchase Agreement, to establish its liability for the amounts due under the promissory note and the Act of Sale. JPG argues that, the Purchase Agreement was the preliminary agreement and foundation for the Act of Sale between the parties, not an authentic act that transferred ownership between it and Woodlands. JPG asserts that because the Purchase Agreement was a preliminary agreement that provided certain contingencies and was eventually superseded by the Act of Sale, the Purchase Agreement was parole evidence that should not have been admitted or considered as evidence to demonstrate JPG’s liability under the promissory note.
Woodlands maintains the Purchase Agreement was properly considered by the trial court in its determinations in this matter. Woodlands contends that the Purchase Agreement obligated JPG to assume and indemnify it for the proceeds paid to Regions Bank for the remaining debt on, the mortgage. Woodlands also contends that the Purchase Agreement was a component of the entire agreement between the parties.
Contracts are interpreted according to the true intent of the parties. First Bank & Trust v. Redman Gaming of La., Inc., 13-369 (La.App. 5 Cir. 12/12/13); 131 So.3d 224, 228. (Citations omitted). “Parties are free to contract for any object that is lawful, possible, and determined or de-. terminable.” La. C.C. art. 1971. “Contracts have the effect of law for the parties and may be dissolved only- through the consent of- the parties or on grounds provided by law.” La. C.C. art. 1983. When the words of the contract are clear, unambiguous, and lead to no absurd • consequence, no further interpretation may be made or consideration of extrinsic evidence be had in search of the parties’ intent and the contract must be 1(¡enforced as written. First Bank & Trust, supra. When a contract can be construed,from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary-judgment. Id,
In this matter, Woodlands and JPG signed the Purchase Agreement, which set forth specific obligations and warranties to be applied to both parties. In the “INDEMNIFICATION, SURVIVAL OF REPRESENTATIONS, AND WARRANTIES” section of the Purchase Agreement, *820 Subsection C, relating to the survival of representations, warranties, and covenants, provides the following:
The representations, warranties and agreements made by [JPG] and by [Woodlands] in this Agreement shall be deemed to apply as of the date of the execution of this Agreement and shall be construed as continuing warranties, representations, and agreements, all of which shall survive the closing of this transaction. (Emphasis added).
Despite JPG’s argument that the Act of Sale superseded the Purchase Agreement, it is clear from the language used in the Purchase Agreement that both Woodlands and JPG intended to have the provisions of the Purchase Agreement survive the Act of Sale. JPG has failed to prove that the survival clause in the Purchase Agreement was dissolved through consent of the parties or a ground provided by law. Thus, JPG has failed to prove it is not bound to the provisions found in the Purchase Agreement. Therefore, like the trial court, we find that the Purchase Agreement is not parole evidence and is to be interpreted in concert with the Act of Sale to determine the rights and obligations of each party.

Insurance Proceeds

JPG alleges the trial court erred in finding that it is liable to Woodlands for the $5,220,300.14 in insurance proceeds that were paid to Regions. JPG contends the Act of Sale specifically provided that any escrow account maintained in connection with the loan assumed and any insurance policies affecting the property conveyed was transferred from Woodlands to JPG. JPG argues that there is no [ 7provision in the closing documentation that it agreed to pay Woodlands any amount of insurance proceeds used to reduce Woodlands’ mortgage. JPG also argues that Woodlands could not reserve the insurance proceeds to itself because Woodlands had already assigned those proceeds to Regions.
Woodlands 'asserts the trial court was correct in its ruling that JPG is obligated to repay it for the $5,220,330.14 in insurance proceeds. Woodlands argues that it retained any litigious rights and interest in its then pending claim against the insurance company for Hurricane Katrina-related damages through the Purchase Agreement, and that the insurance proceeds derived from those claims were excluded from the sale of the property.
JPG is correct in its assertion that there is no provision in the closing documentation that JPG agreed to pay Woodlands any amount of insurance proceeds used to reduce Woodlands’ mortgage. In regard to the insurance on the property and escrow accounts, the Act of Sale simply transferred the escrow accounts and insurance policies on the property from Woodlands to JPG from the time of closing. However, the Purchase Agreement, which we have found to be binding between the parties, provides in pertinent part|
(i) Insurance proceeds. Any insurance proceeds received for damage to property or other claims occurring before the Closing of this Transaction are for the sole benefit of [Woodlands] and shall be paid to [Woodlands] and [Regions] Bank. [Regions] Bank shall hold such insurance proceeds in a separate interest bearing “Escrow Account” for the sole benefit of [Woodlands]. [JPG] shall have no interest in the funds in the “Escrow Account.” In the event the insurance proceeds are taken by [Regions] Bank and applied to reduce the principal balance on the first mortgage, [JPG] will pay [Woodlands] the amount taken by [Regions] from the Escrow Account and applied to the [Regions] first mortgage loan, with interest from date at the rate of LIBÓR plus 2.5% interest until paid.
*821 The language in the Purchase Agreement clearly reserves Woodlands’ right to receive the insurance proceeds for claims on the property at issue that occurred Isbefore the Act of Sale. The insurance proceeds received by Woodlands arose from claims that occurred prior to the closing. The language in the Purchase Agreement also clearly reserves Woodlands’ right to repayment of the insurance proceeds for damages from JPG in the event the bank applied the funds to reduce the principal balance on Woodlands’ mortgage, which ultimately occurred in this matter. There was. no absurd consequence that resulted from this contractual arrangement between the parties.
As such, we conclude that the intent of Woodlands and JPG in. the Purchase Agreement was for Woodlands to be reimbursed for the insurance proceeds used to pay the mortgage on the property, and those proceeds were not conveyed to JPG at the time of closing. Therefore, we find that there is no remaining genuine issue of material fact that JPG is liable to repay Woodlands the $5,220,300.14 in insurance proceeds paid to Regions Bank with interest from date at the rate of LIBOR plus 2.5% interest until paid, as provided for in the Purchase Agreement.'
DECREE
For the foregoing reasons, after de novo review, we find that JPG is liable to Woodlands for repayment of the $5,220,300.14 in ■ insurance proceeds paid on the remaining mortgage for the immovable property at issue with interest from date at the rate of LIBOR plus 2.5% interest until paid, and that Woodlands is entitled to partial summary judgment as a matter of law.

AFFIRMED

. Originally, Soundra J. Temple was also an appellant to this appeal. However, during the pendency of this appeal, Ms. Temple filed a "Motion to Dismiss,” seeking to dismiss her appeal against Woodlands, The motion was granted. Accordingly, we will only address the issues pertaining to JPG in this opinion.

. See Woodlands Development, L.L.C., 164 So.3d at 230.

. , Although it is not relevant to this appeal, we note that the trial court also denied partial summary judgment in favor Anthony Reginel-li, Jr„ Shauna Landry Reginelli, Peter R. Steur, and Lee R. Steur in the same judgment.