DEMETRIA L. ROBINSON-CARTER,
PERSONALLY AND O/B/O DEMETRIA L.
ROBINSON-CARTER, CPA, LLC

VERSUS

ST. JOHN THE BAPTIST PARISH SCHOOL
BOARD

NO. 23-CA-397

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 71,583, DIVISION "A"
HONORABLE VERCELL FIFFIE, JUDGE PRESIDING

April 03, 2024

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Timothy S. Marcel

<u>**AFFIRMED**</u>
   **JJM**
   **SMC**
   **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLEE,
ST. JOHN THE BAPTIST PARISH SCHOOL BOARD
    Jonathan D. Blake

COUNSEL FOR PLAINTIFF/APPELLANT,
DEMETRIA L. ROBINSON-CARTER, CPA, PERSONALLY AND O/B/O
DEMETRIA L. ROBINSON-CARTER, CPA, LLC
    Louis R. Koerner, Jr.

**MOLAISON, J.**

Appellants, a CPA and her accounting firm, seek review of the trial court's judgment that denied her claims related to a proposal for a service contract made to the St. John the Baptist Parish School Board. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The underlying matter involves the award of a contract for "Sales Tax Collection Services/Hotel Motel Tax Collection Services" following a Request For Qualification ("RFQ") process initiated by the St. John the Baptist Parish School Board ("SJPSB.")

The record before us demonstrates that while prior sales tax collection service contracts in St. John the Baptist Parish had routinely been awarded without an RFQ process, in 2017 the SJPSB opted to receive Requests For Qualifications ("RFQs") for the purpose of awarding the next contract upon expiration of the existing one.[1] At trial, Felix Boughton, the Director of Finance for St. John Parish testified that in 2017, he was employed by the SJPSB, where his duties included development of RFQs. For the RFQ in question, he obtained a template from the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP".) As the sales tax collection contract was going to expire on June 30, 2017, Boughton created a RFQ with the assistance of a St. John Parish purchasing agent and presented it to the School Board for consideration at its annual retreat in January of that same year. The only change to the original RFQ was made by Assistant District Attorney Keith Green, who suggested that 10 years of experience

---

[1] The record indicates that from 2004 through 2017, tax collection in St. John the Baptist Parish had been done by Assured Compliance Inc. ("ACI") through a consecutive series of three-year renewable contracts. The record also reflects that the performance of ACI under those same contracts was never called into question. To the contrary, testimony adduced at trial indicated that ACI and its owner had a successful history of collections for SJPSB, erasing the school boards' debt within a two-year period and recouping approximately $31 million in sales tax audits over a 17 or 18 year period.

as a requirement for the contract be changed to a preference instead.[2] Boughton testified that, in his opinion, prior experience was necessary do the sales tax collection work as it is a specialized field. The Board authorized the RFQ with the attorney's suggested change. Boughton stated that, prior to the RFQ going out, he communicated with two other companies who performed tax collection services, but they never submitted bids.

RFQ 17:33 was announced on March 1, 2017, advertised on that date and again on March 8, 2017. Among the pertinent provisions included in the RFQ, were statements that described the discretionary nature of the process. Of particular relevance are the following sections, in pertinent parts, with emphasis added:

> Section 1.1- **The Superintendent reserves the right to review** the proposed tax collection firm **and reject any firm** and/or consultants associated with the tax collection firm **he deems as having a** history of poor performance or **lack of sales tax and hotel-motel tax expertise.**

> Section 3.5 - Issuance of this RFQ in no way constitutes a commitment by the Board to award a contract. **The Board reserves the right to accept or reject,** *in whole or part* **all proposals submitted** and/or cancel this announcement **if it is determined to be in the Board's best interest.**

> Section 3.10 - The Board is not liable for any costs incurred by proposers prior to issuance of or entering into a contract. **Costs associated with developing the proposal**, preparing for oral presentations, and any other expenses incurred by the proposer in responding to this RFQ **are entirely the responsibility of the proposer**, and **shall not be reimbursed in any manner** by the Board.

> 6.1 - The evaluation of RFQs will be accomplished by an evaluation team designated by the Superintendent, **which will determine the RFQs most responsive** *or most advantageous* **to the Board**, taking into consideration the evaluation factors set forth in the RFQs.

> 6.5- The evaluation team can recommend issuing a contract for a ***vendor if the evaluation team determines that this is in the Board's best interest.***

> 6.6.1 - The RFQ will be evaluated on specific sales tax and hotel-motel tax collection experience **with an emphasis on proven cash collections from audits and delinquent accounts. It is preferable to have a minimum of 10 years full time Louisiana local sales tax collection and hotel/motel tax collection experience** including administration, day to day operations an

---

[2] At trial, Mr. Green testified that his suggestion for removing the mandatory requirement was made in the interest of qualifying the largest group of applicants for the RFQ.

audit functions. The Evaluation team will review the RFQ overview of its experience rendering services similar to those included in this RFQ.

The plaintiff/appellant, Demetria L. Robinson-Carter, testified at trial that she had owned her own Certified Public Accounting firm since 2000. In March of 2017, she saw an advertisement for SJPSB's RFQ related to the collection of sales tax and hotel/motel tax. Ms. Robinson-Carter recounted her communications with Mr. Boughton throughout the RFQ process, which consisted of emailed questions and responses and an in person meeting on March 16, 2017, with Mr. Boughton and ACI representatives to review the RFQ's "ground rules." Ms. Robinson-Carter stated that she expended "hundreds" of hours preparing her timely submitted RFQ, and believed that she and her firm were more than qualified to do the work required to fulfil the contract.

Mr. Boughton testified that the only applications responsive to the RFQ were from the appellants and ACI. He explained that, typically, the applicants with the highest scores were sent to the Board for consideration. In this case, the SJPSB Superintendent brought in three persons outside of the St. John the Parish school system to score the RFQ in addition to the regular number of four evaluators. The evaluation score sheet was based on the RFQ itself, which sought preferred experience in local Louisiana sales tax laws on the basis that specific knowledge of local sales tax laws necessary to maximize collections. Mr. Boughton stated that of the two proposals submitted for the tax collection contract, only one had the preference of sales tax collection experience. He emphasized that specific knowledge of local sales tax laws is necessary to maximize collections.

After a vote by the SJPSB, in which eight out of ten members approved, the contract for collections was awarded to ACI on May 11, 2017. On May 19, 2017, pursuant to a process designated in section 6.9 of the RFQ, Ms. Robinson-Carter mailed a letter of protest to the school board president that outlined nine "protest

points" and made a formal demand for a remedy of over two million dollars as a "settlement." Ms. Robinson-Carter's protest was thereafter voted down by the SJPSB at a public meeting.[3] On December 21, 2017, Ms. Robinson-Carter, personally and on behalf of Demetria L. Robinson-Carter, CPA, LLC ("appellants"), filed a petition at the Fortieth Judicial District Court naming SJPSB as defendant. The petition alleged that the Board intentionally misrepresented aspects of its Request for Qualifications for Sales Tax Collection Services/Hotel Motel Collection Services Contracting Process resulting in damages to the appellants based on detrimental reliance, fraud and emotional distress. On January 11, 2018, the appellants amended their petition to request that the contract between the Board and Assured Compliance, Inc., which was a result of the RFQ process at issue, be declared absolutely null and unenforceable. The appellants filed a subsequent amendment to the petition on December 22, 2021. The matter proceeded to a judge trial, which was held between June 20-22, 2022. On October 10, 2022, the trial court rendered judgment in favor of SJPSB. This devolutive appeal follows.

## ASSIGNMENTS OF ERROR

On appeal, the appellants raise six assignments of error:

1. The judgment/reasons for judgment erroneously mischaracterize Robinson-Carter's claims as being based on a verbal agreement. This legal theory, an unpleaded affirmative defense, is unsupported by the cited authority. The contrary witness testimony and eleven exhibits are unmentioned.

2. The judgment/reasons do not address Robinson-Carter's evidence that her response to the school board's RFQ was the only responsive bid from a responsible (qualified) bidder.

3. The trial court erroneously misconstrued the binding legal effect of the RFQ for sales tax collection. A contract for an initial four years of sales tax collection was improperly awarded on December 17, 2017 to Assured Compliance Inc. -St. John, LLC (ACI), a non-

---

[3] The record has no documentation of the date this occurred; however, Ms. Jackson testified that she believed the meeting took places in June of 2017.

responsive bidder/applicant, improperly renewed on August 12, 2021, and remains in effect.

4. The testimony of Amanda H. Granier, Sales Tax Collector for Lafourche Parish and one of the seven "evaluators," established that ACI, to whom the sales tax contract was awarded, was not a responsible or responsive bidder and should have been disqualified.

5. Granier's testimony was that she was not provided the RFQ, Exhibit 1, that contained a mandatory provision: Section 3.2 "Approach and Methodology," so that ACI's response was non-responsive and disqualifying. Dramatic trial testimony established that the purpose of the SJBSB's failure to provide the RFQ to her and to the other evaluators was to assure that the contract would be illegally awarded to ACI.

6. The district court acknowledged but failed to address Robinson-Carter's pleadings asserting claims and causes of action under LSA-R.S. 38:2212, Advertisement and letting to lowest responsible and responsive bidder, etc., detrimental reliance, La. C.C. Art. 2315, and fraud.

## LAW AND ANALYSIS

### *Assignments of error one and two*

As a preliminary matter, we address the issues raised in the appellants' assignments of error that are specifically related to the trial court's reasons for judgment. To the extent that the appellants rely on the trial court's written reasons for judgment to make an argument that the court erred in its determination of their claims, we note that appellate Courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918; *Burmaster v. Plaquemines Parish Government*, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. *State in the Interest of Mason*, 356 So.2d 530, 532 (La. App. 1 Cir. 1977). Similarly, this Court has held that oral reasons for judgment are not part of the official judgment which the trial judge signs or from which appeals are taken. *Par. of St. Charles v. Young*, 99-411 (La. App. 5 Cir. 12/15/99), 750 So.2d 276, 278. Because the reasons for judgment form no part of the judgment on appeal, we find no merit generally to the appellants' argument that the trial court's failure to mention certain aspects of their

claims, or its recitation of the law, constitutes reversible error. Nevertheless, upon review, we find no error in the trial court's judgment, as discussed more fully below.

### Assignment of error six

To the extent that the appellants allege error by the trial court for failure to rule on a particular claim, we note that when a judgment is silent as to a claim or demand that was litigated, it is presumed to be deemed denied by the trial court. *Oreman v. Oreman*, 07-296 (La. App. 5 Cir. 10/30/07), 971 So.2d 1149, 1158. However, upon review, we find no error in the trial court's judgment which denied the claims as alleged in the petition.

### Standard of review

The appropriate standard for appellate review in this case is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC,* 14-2592 (La. 12/08/15), 193 So.3d 1110, 1115-17. It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." The Supreme Court has proclaimed a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993). Although deference to the factfinder should be afforded, this Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the

trial court. See, La. Const. Art. 5, section 10(B); *Earls v. McDowell*, 07-17 (La. App. 5 Cir. 5/15/07), 960 So.2d 242, 247-48.

***Request For Qualifications***

This Court has previously found that the Louisiana Public Bid Law is not applicable to service contracts, which are not contracts for a public work. *Tiger Air & Heat, LLC v. Jefferson Par. Sch. Bd.*, 02-610 (La. App. 5 Cir. 10/16/02), 832 So.2d 324, 327, *writ denied*, 02-2762 (La. 3/14/03), 839 So.2d 35. Accordingly, requirements such as awarding contracts to the "lowest responsible bidder" are not strictly applicable in contracts like the one at issue. Another significant difference between public bid and service contracts lies in the rigidity of their respective processes. As observed by the First Circuit in *Barriere Construction Co., L.L.C. v. Terrebonne Parish Consolidated Government*, 99-2271 (La. App. 1 Cir. 2/18/00), 754 So.2d 1123, *writ denied*, 00-0801 (La.5/5/00), 761 So.2d 546, "[t]he Public Bid Law could not be more clear in stating that a bidder's failure to comply with every detail can invalidate the bid." By way contrast, this Court has opined regarding service contacts:

> While a public entity may elect to use the sealed bid process and must comply with the requirements in its bid documents, it does not necessarily follow that its service contracts will be subject to Louisiana public bid laws or provide remedies for contracts which are contrary to public bid laws.

*Ramelli Janitorial Serv., Inc. v. H&O Invs., LLC*, 22-266 (La. App. 5 Cir. 9/21/22), 350 So.3d 588, 591-92. Taking all of the foregoing into account, our analysis of the issues raised in this appeal is shaped into a focus of whether SJPSB complied with its own requirements for the RFP and, if not, what damages may be available to the appellants as a result.

Much of the appellants' argument on appeal, assignments of error four and five in particular, center on what they deem to be an "unresponsive bid" on the part of ACI. Specifically, it is alleged that ACI provided insufficient or incomplete

answers in RFQ Section 5.3, which is titled "APPROACH AND METHODOLOGY." Based upon the subjective opinion that ACI's answer to this section fell short of the requirement, the appellants contends that ACI's RFQ should have been either completely disqualified,[4] or at least been assessed a lower score by the RFQ evaluators. A review of ACI's proposal shows that it *did* provide a mandatory answer to section 5.3, which means it was not subject to the disqualification provision found in RFQ section 4.1. Assuming for the sake of argument that ACI's submission under section 5.3 was incomplete, SJPSB retained the discretion to require additional information from ACI or assess it a lower score. However, as indicated in the language of section 4.1, either action was permissive at best, *if* the SJPSB had decided to take any action at all.

In addition, as noted above, various provisions of the RFQ clearly reserved to STJSB the discretion to award the contract "most advantageous to the Board" and "in the Board's best interest." In evaluating similar cases where a contract for services awarded by a public entity was at issue, we have previously found that the awarding entity has "broad and ultimate authority" in awarding the contract that is "most advantageous." *Waste Mgmt. of Louisiana, L.L.C. v. Consol. Garbage Dist. No. 1 of Par. of Jefferson*, 12-444 (La. App. 5 Cir. 3/13/13), 113 So.3d 243, 250.

### *Detrimental reliance*

In her petition, Ms. Robinson-Carter alleged that she expended several hundred hours and incurred costs in preparing a response to the RFQ, which

---

[4] RFQ Section 4.1 states, in relevant part:

Failure to submit all information requested may result in the Board requiring prompt submission of missing information and/or giving a lower score in the evaluation of the RFQ; however failure to submit mandatory information **shall** cause the RFQ to be disqualified.

[Emphasis as in the original.]

exceed $50,000.00,[5] and sought to recoup these costs under the theory of detrimental reliance.

As noted above, the RFQ clearly states in section 3.5 that "Costs associated with developing the proposal, preparing for oral presentations, and any other expenses incurred by the proposer in responding to this RFQ are entirely the responsibility of the proposer, and shall not be reimbursed in any manner by the Board." Thus, the plain language of the terms in the RFQ makes clear that no reimbursement will be offered to a party responding to the RFQ, regardless of whether the proposal is successful or not.

The theory of detrimental reliance is codified at La. C.C. art.1967:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 03-1662 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 393, *writ denied*, 2004-0969 (La.6/25/04), 876 So.2d 834.

In a public project advertised for public bidding, there is no contractual relationship between an unsuccessful bidder and the public body who advertises for bids. *Airline Const. Co. v. Ascension Par. Sch. Bd.*, 568 So. 2d 1029, 1032 (La. 1990). A bid in response to a solicitation for competitive bidding constitutes no more than an offer, and a contract does not exist until the bid is accepted. 1

---

[5] No evidence of either the alleged time expended or expenses incurred in crafting the proposal was introduced at trial.

Williston, Contracts § 31 (3rd ed. 1957). A public body's advertising for competitive bidding is a mere invitation for offers and is not itself an offer, subject to acceptance by the submission of a bid. *Id.*

The appellants appears to insinuate that they were lured to respond to the RFQ in the belief that it was a fair and open process when, in fact, they conclude it was not. The merits of the appellants' detrimental reliance claim, and any trial court error related to it, have not been briefed on appeal. In reviewing the record, however, we find no basis to support a claim for damages under this theory of recovery. Here, the RFQ was advertised to the public. The appellants cannot say that they were promised in advance to receive the tax collection contract. The RFQ plainly states that the bidder was solely responsible for the cost of the bid. But for their preparation and submission of a document responsive to the RFQ, the appellants would have been ineligible to participate in the process. In spite of their bare allegations to the contrary, the appellants present no evidence to support the claim that the RFQ process in this matter was unlawful, unethical, or otherwise non-compliant with its own rules for the awarding of the contract. Under these facts, we find no trial court error in the denial of the apellants' detrimental reliance claim.

### *Fraud*

As with their detrimental reliance claim, the appellants' cause of action for fraud is not specific with regard to an argument on appeal or an alleged error by the trial court. They also appears to rely on the same vague underpinning that the RFQ process in this matter was falsely represented to be fair.

In their petition, the appellants alleged fraud under La. C.C. art. 1953, which states:

> Fraud is a misrepresentation or a suppression of the truth made with
> the intention either to obtain an unjust advantage for one party or to

cause a loss or inconvenience to the other. Fraud may also result from
silence or inaction.

In order to establish a claim for fraud, the plaintiff must prove: 1) a misrepresentation, suppression, or omission of true information; 2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and 3) the resulting error must relate to a circumstance substantially influencing the other party's contractual consent. *Port City Ventures, L.L.C. v. Angle*, 52,745 (La. App. 2 Cir. 8/14/19), 277 So.3d 522, 527.  In order to prove fraud from silence or suppression of the truth, there must be a duty to speak or disclose information. *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, 629, *cert. denied*, —— U.S. ——, 136 S.Ct. 1167, 194 L.Ed.2d 178 (2016); *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992).  The specific intent to deceive is a necessary element of fraud, and fraud cannot be predicated upon mistake or negligence. *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 11-0072 (La. App. 1 Cir. 8/17/11); 76 So.3d 502, 509, *writ denied*, 11–2021 (La. 11/18/11); 75 So.3d 464.

In this case, for the appellants to succeed on their claim for fraud, they would  first need to prove that they were not afforded the "truth" of the RFQ process which, in their opinion, was that they never would have been awarded the tax collection contract. To reach this conclusion would require acceptance of facts that have not been demonstrated in the record – that the process was forced into producing a predetermined result. As noted above, the evidence presented supports the conclusion that the RFQ process followed its own procedural and publicized rules in awarding the contract.  The appellants also have not proven that there was an orchestrated effort by any party that was intended to put them at a disadvantage or to otherwise cause damage or inconvenience them.  Accordingly, we find no manifest error in the trial court's denial of appellants' claim for fraud.

*Conclusion*

The service contract at issue is not subject to the public bid laws found at La. R.S. 38:2212. However, the SJPSB was required to comply with parameters set forth in the RFP. The record shows that the SJPSB took the step of eliminating required experience in tax collection for the purpose of allowing for a broader pool of applicants to apply for the contract. All applicants were specifically advised in advance that there would be no reimbursement for the costs of preparing a proposal. It also added four additional evaluators to process the proposals submitted for the RFP. Throughout the process, the SJPSB was responsive to the appellants' questions and concerns. While ACI's proposal may not have been as detailed in some sections as the appellants' proposal, ACI did not disqualify itself under the terms of the RFP itself by failing to completely omit required information. The remedy for providing less detailed information was in the sole discretion of the SJPSB. Perhaps most importantly, the SJPSB expressly reserved its right to choose a proposal deemed to be in its own best interest. It appears, based on the record, that the SJPSB took into account ACI's successful past performance in awarding a new contract. We find no error in the trial court's judgment that the appellants did not prove the RFP process was, in any way, intentionally fraudulent or otherwise designed to produce a certain result. Consequently, we further find no error in the trial court's determination not to award damages to the appellants. For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 3, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-397**

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE VERCELL FIFFIE (DISTRICT JUDGE)
VERCELL FIFFIE (APPELLEE)          LOUIS R. KOERNER, JR. (APPELLANT)

**MAILED**
JONATHAN D. BLAKE (APPELLEE)
ATTORNEY AT LAW
2431 SOUTH ACADIAN THRUWAY
SUITE 600
BATON ROUGE, LA 70808